UNITED STATES DISTRICT COURT
NORTHISN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Ivan Perez Canola | ) | Case No: |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge |
| v. | ) | |
| | ) | |
| Department of Homeland Security | ) | Magistrate Judge |
| Immigration and Customs Enforcement, | ) | |
| Department of Justice, | ) | Jury Demand |
| Executive Office of Immigration Review | ) | |
| Kristi Noem, | ) | |
| Pam Bondi, | ) | |
| Richwood Correctional Center, Louisiana | ) | |
| | ) | |

## MOTION FOR EMERGENCY *EX PARTE* TRO
## PURSUANT TO FRCP 65 (B)

NOW COMES the Plaintiff, Ivan Perez Canola, by and through his attorney, John W. Heiderscheidt seeking an emergency, *ex parte* temporary restraining order ("TRO") against the Defendants Kristi Noem and Pam Bondi, individually, as well as DHS, ICE, DOJ, the Executive Office of Immigration Review ("EOIR") and Richwood Correctional Center, Louisiana and in support of his complaint states as follows:

1. On June 10, 2023, DHS paroled Ivan Perez Canola ("Plaintiff") in the United States under its humanitarian parole authority authorized by Immigration and Nationality Act ("INA") § 212 (d)(5) until June 08, 2025. See, I-94, attached as Exhibit A;

2. On the same day, Plaintiff received a Notice to Appear ("NTA") designating him as an "arriving alien" and making four factual allegations which Plaintiff later admitted. See, NTA

attached as Exhibit B;

3. Under existing law, Immigration authorities designate whether an alien is classified as an "arriving alien" under INA § 235 or an "alien present" in the United States under INA § 236, but such designation must have a rational basis in law and cannot be made in an arbitrary or capricious fashion; See, generally, Administrative Procedures Act. See, also, Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1 (2020). See, also, Loper Bright Enterprises v. Raimondo 603 U.S. 369 (2024);

4. Between June 10, 2023, and June 16, 2025, Plaintiff had been processing his I-589 on the *non-detained* EOIR docket in Chicago, IL, allowing Plaintiff freedom of movement within the territorial United States during this time;

5. Plaintiff was not placed on electronic monitoring, nor required to report to ICE offices with any frequency after being paroled in the United States;

6. On June 13, 2024, Plaintiff filed an I-589 seeking asylum in the United States, based on a credible fear of return to Ecuador. See, I-589 attached as Exhibit C;

7. By virtue of filing an asylum application, Plaintiff was eligible to receive an Employment Authorization Document ("EAD") and social security number for work. See, 8 CFR § 208.7;

8. By virtue of filing an asylum application and his humanitarian parole, Plaintiff avoided accruing "unlawful presence" in the United States and under Immigration law does not have more than a few days of unlawful presence in the United States. See, INA § 212 (a)(9)(B)(iii)(II);

9. On November 6, 2024, President Trump was elected;

10. In January, 2025, President Trump was sworn-in as the 47th President of the United States;

11. In January, 2025, J.D. Vance was also sworn in to office as the Vice-President of the United

States;

12. Shortly after inauguration, President Trump appointed Tom Homan to be the border czar, and Stephen Miller to be a policy advisor on immigration in the White House;

13. Throughout the Spring of 2025, these administration officials all publicly commented on the administration's stated policy goal to impede, obstruct, and outright deny due process for immigrants in the United States;

14. A representative sampling of public statements/actions from top-level officials, including President Trump concerning the administration's unwillingness to afford due process to immigrants include:

    a. "We cannot give everyone a trial, because to do so would take, without exaggeration, 200 years." President Trump, social media post;

    b. "The judicial process is for Americans. Immediate deportation is for illegal aliens." Immigration Policy Adviser Stephen Miller, social media post;

    c. "We're gonna [sic] flood the zone." Border Czar Tom Homan, Public Press Conference;

    d. "To say the administration must observe 'due process' is to beg the question: what process is due is a function of our resources, the public interest, the status of the accused, the proposed punishment, and so many other factors." Vice President J.D. Vance, social media post;

    e. Unveiled "Alligator Alacatraz" a multi-million-dollar ICE detention facility surrounded by a moat of alligators that would slaughter and eat any immigrant daring to escape custody; and

    f. Unlawfully sending immigrants to LATAM supermax detention facilities.

15. On May 15, 2025, the Board of Immigration Appeals announced a precedent decision that purported to require any and all parolees to the United States to be treated as "arriving aliens" under INA §235, irrespective of whether such designation would be arbitrary, capricious, or lack a rational basis as applied to each individual immigrant. See, *Matter of Q Li* 29 I&N Dec. 66 (BIA 2025). Cf. Order of DC District Court in case no.: 1-25-872 attached as Exhibit D. Cf. also Loper Bright Enterprises v. Raimondo 603 U.S. 369 (2024);

16. On June 16, 2025, after attending a master calendar hearing on the non-detained docket at EOIR – Chicago, ICE agents arrested Plaintiff, violating his sixth amendment constitutional right to consult with the attorney of his choosing, and violating his fourth amendment right to be free from unreasonable seizures, and his Fifth Amendment right to due process in the pursuit of an asylum application. See, Order of Chicago Immigration Judge Jody Barilla denying DHS' motion to terminate proceedings, attached as Exhibit E;

17. On June 18, 2025, the government requested a change of venue from the non-detained Chicago docket to the detained Louisiana docket after shipping Plaintiff far away from defense counsel or loved ones;

18. On July 09, 2025, undersigned counsel filed a bond redetermination request, which the Louisiana EOIR denied because it treated Plaintiff as an "arriving alien" under INA § 235. See, Order of Immigration Judge Jennifer May, attached as Exhibit F. This determination is currently being appealed to Board of Immigration Appeals;

19. It will take months, if not longer, to process that appeal, and the government will attempt to keep custody of Plaintiff for the duration of the appeal. See INA § 235;

20. After denying bond, EOIR – Louisiana scheduled Plaintiff for an Individual Calendar Hearing on September 4, 2025;

21. On August 18, 2025, the government moved to pretermit the asylum case, on the grounds it had reached a new Asylum Cooperative Agreement (ACA) with the government of Honduras that applies to Plaintiff. See, DHS Motion to Pretermit, attached as Exhibit G;

22. Undersigned counsel opposed this motion in a timely filed reply. See, Reply to DHS Motion to Pretermit, attached as Exhibit H;

23. In essence, the government now wants to ship Plaintiff off to Honduras, without so much as a hearing on the asylum application it paroled him in to pursue for humanitarian purposes on a non-detained docket in EOIR – Chicago;

24. In so doing, the government will accomplish a double violation of process, robbing Plaintiff of his Legislative right to pursue asylum guaranteed by the due process clause of the Fifth Amendment as an alien present in the United States and making it virtually impossible for him to pursue the § 1983 violations Immigration Judge Jody Barilla documented in a now final order on June 16, 2025. See, Exhibit E;

25. A federal district court may issue an ex parte temporary restraining order under the guidelines established by FRCP 65, so long as the Plaintiff satisfies a three-prong test;

26. The movant must demonstrate (i) a likelihood of success on the merits, (ii) that it has no adequate remedy at law, and (iii) that it will suffer irreparable harm if the relief is not granted. See, Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020);

27. Under 7th Circuit precedent, a likelihood of success only means that a movant must show a "better than negligible" chance of success;

28. Plaintiff well exceeds this mark;

29. An Immigration Judge documented via court order that Plaintiff's constitutional rights were violated;

30. That Order went unchallenged and is now a final, non-appealable order;

31. Res judicata and collateral estoppel bar any challenge to the factual or legal conclusions established by Exhibit E, as the Government failed to appeal Barilla's Order within 30 days of its entry;

32. In the Seventh Circuit, the "no adequate remedy" and "irreparable harm" elements essentially mirror each other: "[h]arm is irreparable if legal remedies are inadequate to cure it." See, Doe v. Trump, 2025 U.S. Dist. LEXIS 88038, *39-40;

33. Essentially, the analysis looks to whether monetary compensation will make the movant whole. See Orr v. Shicker, 953 F.3d 490, 502 (7th Cir. 2020) ("This takes us to irreparable harm … which we have defined as harm that cannot be repaired and for which money compensation is inadequate.");

34. Here, no monetary damages could compensate for the emotional well-being that comes from pursuing asylum as an alien present in the United States, rather than via a bogus WebEx connection from a third-world supermax detention facility;

35. Likewise, no monetary damages can compensate for the deprivation of a Plaintiff's right to file and serve a § 1983 claim on the individuals who violated Plaintiff's constitutional rights, or the right to confer directly with counsel to pursue the claim. See, Doe v. Noem, 2025 U.S. Dist. LEXIS 73660;

36. If the moving party meets this three-element threshold showing, the court "must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction." See, Planned Parenthood, of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health, 896 F.3d 809, 816 (7th Cir. 2018);

37. If the Court grants the TRO, the government will continue to keep Plaintiff in removal

proceedings, without seriously jeopardizing its right to carry out a removal should one become necessary at a later date;

38. If the Court fails to enter the TRO, Plaintiff's right to pursue legal redress for the constitutional violations a sitting Immigration Judge documented while working under color of law may never be adequately addressed, because a Plaintiff who had been allowed to roam the United States free for 24 calendar months is suddenly and with obstructed legal assistance whisked away to a supermax detention facility in Honduras that may not even be operational yet.

39. The mere fact that one of Plaintiff's attorneys was required to verify this Complaint, because it would take weeks to complete a regular mailing between Plaintiff and counsel's law office while Plaintiff is incarcerated, highlights the problematic challenges posed by putting several countries and barriers to communication between Plaintiff and his § 1983 counsel;

40. The bulk of 7th Circuit and Supreme Court precedent cuts in favor of a finding for Plaintiff on the balancing element;

41. Undersigned counsel is deeply concerned that giving too much advance notice to the government with any wiggle room of time in advance of issuance of a TRO, EOIR-Louisiana will pretermit Plaintiff's Asylum case in bad faith and expedite his removal under INA § 235 in an effort to ward off liability to Plaintiff in a pending §1983 claim against the government. See, Exhibit E, generally. See, also, Plaintiff's Verified Complaint attached as Exhibit I;

42. Never-the-less, in a good faith effort to comply with FRCP 65(b)'s requirements, undersigned counsel will provide notice to an attorney within N.D. IL U.S. Attorney's office that the Complaint has been filed, and an emergency TRO has been requested, via email and by hand-delivery of Plaintiff's Verified Complaint, Emergency Motion for Ex Parte TRO with Exhibits, on the same day it is filed with the Court;

43. Plaintiff's removal hearing is scheduled for September 4, 2025, and it is doubtful the EOIR – Louisiana Court will deny DHS' Motion to Pretermit, based on undersigned counsel's anecdotal experience with that court system prior to and after President Trump's inauguration as well as a review of Immigration Judge May's TRAC data;

44. The act of moving Plaintiff to a southern-based ICE holding facility is part of a broad administration policy of venue shopping for the harshest immigration judges involved with EOIR today;

45. It is evident this was the strategy employed against Plaintiff, as TRAC data for Immigration Judges show Immigration Judge Barilla had a 60% asylum grant rate, while Immigration Judge May has a 10% asylum grant rate. See, print out of TRAC data for Judges Barilla and May, respectively, attached as Exhibit J; and

46. Defendants moved Plaintiff to a facility that DHS OIG reported in 2023 restricted "legal calls without justification." See, DHS OIG Report, attached as Exhibit K.

WHEREFORE, Plaintiff respectfully requests this Honorable Court issue an emergency *ex parte* TRO against all Defendants as follows:

1. Restraining Defendants from conducting an Individual Calendar Hearing on a detained EOIR docket for the next ten (10) calendar days;

2. Setting the matter for a hearing to convert the TRO to a preliminary injunction in accordance with FRCP 65(b) to enjoin Defendants from removing Plaintiff before his § 1983 suit is settled or heard by a jury;

3. Prohibiting DHS, EOIR, or any of their sister immigration enforcement agencies from continuing Plaintiff's case on the detained EOIR-Louisiana docket;

4. Ordering DHS, EOIR, and all other Defendants to take all steps necessary to return

Plaintiff to Chicago's non-detained EOIR docket and set his matter for a master calendar hearing in that venue;

5. Ordering that EOIR – Chicago limit Plaintiff's appearances to Master Calendar Hearings, until such time as Plaintiff's § 1983 claim is heard by a jury or settled between the parties;

6. For an award of attorney fees, costs, and expenses for the bringing of this Emergency TRO; and

7. Any other relief as this Court deems just and equitable.

Respectfully Submitted,

/s/<u>John W. Heiderscheidt</u>

John W. Heiderscheidt
HLG, LLC d/b/a "Subscription Lawyer"
7257 W. Touhy Ave.
Suite 201-A
Chicago, IL, 60631
312-331-0087
<u>info@subscriptionlawyer.com</u>
ARDC: 6305341 / Gen Bar