Jamien A. Arvie                                        **DETAINED**
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
Office of the Principal Legal Advisor
1010 East Whatley Road
Oakdale, Louisiana 71463
(318) 335-7500

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## UNITED STATES IMMIGRATION COURT

In the Matter of:

**PEREZ CANOLA, IVAN GILBERTH**          File No.      A244071517

In Removal Proceedings

Immigration Judge: JAM                    Next Hearing: 9/4/2025

## DEPARTMENT OF HOMELAND SECURITY'S
## MOTION TO PRETERMIT THE RESPONDENT'S PROTECTION APPLICATIONS

The Department of Homeland Security (DHS) moves the Immigration Judge to pretermit the respondent's applications for asylum under section 208 of the Immigration and Nationality Act (INA), statutory withholding of removal under INA § 241(b)(3), and protection under the regulations implementing the U.S. obligations under Article 3 of the Convention Against Torture (CAT). The respondent is barred from applying for such forms of protection under INA § 208(a)(2)(A) and 8 C.F.R. § 1240.11(h)(2), because he/she is subject to the Asylum Cooperative Agreement (ACA) with Honduras. *See Agreement Between the Government of the United States of America and the Government of the Republic of Honduras for Cooperation in the Examination of Protection Requests*, 90 Fed. Reg. 30076 (July 8, 2025).

Under INA § 208(a)(2)(A), an alien is ineligible to apply for asylum in the United States if the alien may be removed, pursuant to a bilateral or multilateral agreement to a country where the alien's life or freedom would not be threatened on account of a protected ground and the alien would have access to a full and fair procedure for determining a claim to asylum or equivalent protection. Under the regulations,[7] an alien subject to the terms of an ACA who arrived at a U.S. port of entry or entered or attempted to enter the United States between ports of entry on or after November 19, 2019, is ineligible to apply for asylum, statutory withholding of removal, and CAT protection. 8 C.F.R. § 1240.11(h)(2); *see also Implementing Bilateral and Multilateral Asylum Cooperation Agreements under the Immigration and Nationality Act*, 84 Fed. Reg. 63,994 (Nov. 19, 2019). Instead, then alien will be removed to the ACA country to pursue his/her protection claim in that country. 8 C.F.R. § 1240.11(h)(4).

---

[7] The pertinent regulations apply to all ACAs in force between the United States and countries other than Canada. *See* 84 Fed. Reg. at 63,994. The ACAs, including the terms of their applicability and their exceptions, are published in the Federal Register.

Immigration Judges have authority to consider the applicability of ACAs in removal proceedings. 8 C.F.R. § 1240.11(h)(1). An alien subject to an ACA is ineligible to apply for protection and the Immigration Judge must order the alien removed to the ACA country for the alien to pursue protection in that country unless the Immigration Judge determines, by a preponderance of the evidence, that: (1) the relevant ACA does not apply to the alien; (2) the alien qualifies for an exception under 8 C.F.R. § 1240.11(h)(3) and/or the Federal Register notice for the relevant ACA; or (3) the alien has demonstrated that it is more likely than not that he or she would be persecuted on account of a protected ground or tortured in the relevant ACA country. *See* 8 C.F.R. § 1240.11(h)(1)-(3).

On July 8, 2025, the ACA between the United States and Honduras was published in the Federal Register. *See* 90 Fed. Reg. at 30076; *see also* Attached Exh. A. The U.S.-Honduras ACA applies to any alien who: (1) arrived at a U.S. port of entry, or entered, or attempted to enter the United States between ports of entry on or after November 19, 2019. It does not apply to citizens or nationals of Honduras, unaccompanied minors, aliens who arrive in the United States with a valid visa or other admission document, aliens who were or are involved in certain criminal activity, or aliens who are the subject of an INTERPOL Notice. 90 Fed. Reg. at 30078-80.

The respondent is a native and citizen of ECUADOR who arrived at a U.S. port of entry or entered or attempted to enter the United States between ports of entry on or about June 10, 2023, which is on or after November 19, 2019. Moreover, the respondent is not a citizen or national of Honduras, is not an unaccompanied minor, did not arrive in the United States with a valid visa or other valid admission document, and is not known to be the subject of an INTERPOL Notice or other disqualifying criminal activity. Thus, the U.S.-Honduras ACA applies to the respondent. 8 C.F.R. § 1240.11(h)(2)(i). Additionally, the respondent failed to establish that they qualify for an

exception under 8 C.F.R. § 1240.11(h)(3) or the Federal Register notice for the U.S.-Honduras ACA. 8 C.F.R. § 1240.11(h)(2). Moreover, at this time, the respondent has not expressed a fear of return to Honduras and/or demonstrated that it is more likely than not he/she will be persecuted on account of a protected ground or tortured in Honduras. Thus, the respondent is barred from applying for asylum, statutory withholding of removal, and CAT protection in the United States, and the Immigration Judge should enter an order pretermitting such applications. INA § 208(a)(2)(A); 8 C.F.R. § 1240.11(h)

Accordingly, DHS requests that the Immigration Judge enter an order pretermitting the respondent's applications for asylum, statutory withholding, and CAT protection.

DHS further requests that the Immigration Judge enter, without further hearing, an order of removal to Honduras where the respondent can pursue his/her protection application, pursuant to the U.S.-Honduras ACA. 8 C.F.R. § 1240.11. If the respondent indicates an intent to withdraw his/her protection request and is not eligible for any other form of relief, the Immigration Judge should enter an order of removal to ECUADOR. *See* 84 Fed. Reg. at 63,998 (noting that aliens subject to an ACA may voluntarily abandon his or her asylum claim prior to removal to the ACA country); *cf.* 8 C.F.R. § 208.30(e)(7)(i)(B). If the respondent indicates an intent to request any other forms of relief for which he/she may be eligible, DHS requests an expedited master calendar hearing to resolve these issues.

Respectfully submitted on August 8, 2025,

_____
Jamien A. Arvie
Deputy Chief Counsel

## **CERTIFICATE OF SERVICE**

☐      On the below date, I mailed a copy of this document and any attached pages to the respondent by placing said copy in my office's outgoing mail system in an envelope duty addressed to the following:

☒      On the below date, I served a copy of this document and any attached pages through the EOIR Courts and Appeals System (ECAS), which will automatically send service notifications to both parties that a new document has been filed.

_____

Jamien A. Arvie
Deputy Chief Counsel

<u>8/8/2025</u>
Date

# TAB A

**30076**    **Federal Register** / Vol. 90, No. 128 / Tuesday, July 8, 2025 / Notices

## DEPARTMENT OF HOMELAND SECURITY

**Agreement Between the Government of the United States of America and the Government of the Republic of Honduras for Cooperation in the Examination of Protection Requests**

**AGENCY:** Department of Homeland Security.

**ACTION:** Notice of Agreement and Amendment.

**SUMMARY:** The Department of Homeland Security is publishing the Agreement Between the Government of the United States of America and the Government of the Republic of Honduras for Cooperation in the Examination of Protection Requests, signed at Washington on March 10, 2025 (the

''Agreement''). DHS is also publishing an Amendment to the Agreement, which consists of diplomatic notes exchanged at Tegucigalpa on June 25, 2025. The text of the Agreement and the Amendment are set out below.

**Robert T. Law,**

*Senior Counselor, U.S. Department of Homeland Security.*

**BILLING CODE 9110–9M–P**

Uploaded on: 06/08/2025 04:40:52 PM Central Daylight Time Bar #0335NA

### AGREEMENT BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF THE REPUBLIC OF HONDURAS FOR COOPERATION IN THE EXAMINATION OF PROTECTION REQUESTS

THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF THE REPUBLIC OF HONDURAS, hereinafter referred to individually as a Party or collectively as the Parties,

**CONSIDERING** that Honduras is a party to the main international human rights instruments, particularly the 1951 Convention Relating to the Status of Refugees, done at Geneva on July 28, 1951 (the "1951 Convention"), and the Protocol Relating to the Status of Refugees, done at New York on January 31, 1967 (the "1967 Protocol"). The United States of America is a party to the 1967 Protocol and other relevant international instruments to which Honduras is also a party, and reaffirming the Parties' obligations to provide protection to eligible refugees physically present in their respective territories, in accordance with their obligations under these instruments, subject to the reservations, understandings, and declarations of the Parties;

**RECOGNIZING** in particular the Parties' obligations to comply with the principle of non-refoulement established in the 1951 Convention and the 1967 Protocol, as well as in the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, adopted in New York on December 10, 1984 (the "Convention against Torture"), subject to the Parties' respective reservations, understandings, and declarations of the Parties, and reaffirming their obligations to promote and protect human rights and fundamental freedoms in accordance with their international obligations;

**RECOGNIZING AND RESPECTING** each Party's obligations under their national laws, policies, instructions, and agreements;

**HIGHLIGHTING** that the United States of America and Honduras offer asylum and refugee protection systems that are consistent with their obligations under the 1951 Convention and the 1967 Protocol, and are committed to cooperation and the sharing of responsibilities regarding protection applicants;

**DESIRING** to preserve access to asylum and refugee status or equivalent temporary protection as an essential instrument of international refugee protection, while seeking to prevent fraud in the protection system, which undermines its legitimate purpose, and determined to strengthen the integrity of that institution and the public support on which it depends;

**CONVINCED** that relations between States can enhance international refugee protection by promoting the orderly management of asylum, refuge, or protection requests by the responsible authority and the principle of responsibility-sharing;

**AWARE** that responsibility-sharing must ensure in practice that individuals in need of international protection are identified and that violations of the fundamental principle of non-refoulement are avoided, and therefore determined to ensure that each eligible protection applicant under their jurisdiction has access to a full and fair protection determination procedure;

**AGREE as follows:**

**ARTICLE 1**

**Definitions for the purpose of this Agreement:**

1. **"Protection Request"** means a request by an individual to the government of a Party to receive protection in accordance with its obligations under the 1951 Convention, the 1967 Protocol, or the Convention against Torture, in accordance with the laws and policies of each Party, or any other equivalent temporary protection available under Honduran immigration law.

2. **"Protection Applicant"** means any individual who submits a Protection Request in the territory of one of the Parties in relation to the obligations of each Party.

3. **"Protection Determination System"** means the set of laws and administrative and judicial practices used by each national government of each Party to adjudicate Protection Requests.

4. **"Unaccompanied Minor"** means a Protection Applicant who has not yet reached eighteen years of age and who does not have a parent or legal guardian present and available to provide care and custody in the country where the Unaccompanied Minor is found, whether in the United States or in Honduras.

**ARTICLE 2**

This Agreement does not apply to Protection Applicants who are citizens or nationals of Honduras, or who, having no country of nationality, are habitual residents of Honduras.

**ARTICLE 3**

1. In order to ensure that Protection Applicants have access to a Protection Determination System, or equivalent temporary protection, Honduras shall not return or expel a Protection Applicant referred by the United States until a final administrative decision has been made on the individual's Protection Request. In accordance with its national legislation and international obligations, it is expected that Honduras will determine a procedure to resolve the possible abandonment of requests by individuals transferred under this Agreement.

2

Honduras reserves the right to accept any Protection Applicant removed under the terms of this Agreement.

2. The acceptance of all individuals transferred under this Agreement will be at the discretion of Honduras.

3. Except for the individuals described in paragraphs 1 and 2 of Article 4 and paragraph 2 of Article 5, Honduras shall examine, in accordance with its Protection Determination System, the Protection Request of any individual who submits such a request in Honduran territory after arriving at a port of entry or crossing a border between ports of entry of the United States on or after the entry into force of this Agreement. The Parties shall respect the decisions of each in relation to Protection Determinations made in accordance with their respective national laws.

4. The United States shall apply this Agreement with respect to Unaccompanied Minors in accordance with its domestic laws and international obligations.

**ARTICLE 4**

1. The responsibility for determining the outcome of the Protection Request lies with the United States when the United States determines that the individual:

    a. Is an Unaccompanied Minor; or

    b. Arrived in the territory of the United States:

        i) With a valid visa issued or with another valid admission document, other than transit, issued by the United States; or

        ii) Without being required to obtain a visa to enter the United States.

2. Honduras shall not dispute any decision by the United States that determines an individual qualifies for an exception under Articles 4 and 5 of this Agreement.

3. The Parties shall establish procedures to ensure that the transfers of Protection Applicants to Honduras comply with the obligations set forth in this Agreement and the national laws of each Party.

## ARTICLE 5

1. Notwithstanding any provision of this Agreement, either Party may, at its own discretion, examine any Protection Request submitted to that Party when it determines that it is in the public interest to do so.

2. Nothing in this Agreement shall be understood as an obligation for the Parties to accept requests from individuals involved in: Crimes against humanity, drug trafficking, terrorism, human trafficking, smuggling of migrants, child pornography, human rights violations, and any other activity linked to illicit activities, or who are the subject of Interpol notifications.

## ARTICLE 6

1. The Parties shall develop standard operating procedures to assist with the implementation of this Agreement.

2. In the event of a conflict or controversy arising from the application of this Agreement, the Parties commit to resolving such matters through dialogue or diplomatic channels.

3. The United States intends to cooperate with Honduras to strengthen institutional capacities with respect to its Protection Determination System.

4. The Parties intend to review this Agreement and its implementation. The first review may be conducted no later than 3 months after the effective date of this Agreement and will be carried out jointly by representatives of each Party.

## ARTICLE 7

1. This Agreement shall enter into force upon the exchange of notes by both Parties, indicating that each has completed the necessary internal legal procedures for the entry into force of this Agreement. This Agreement will automatically renew after each one-year period for an additional year, subject to notification at least 30 days prior to its expiration by either Party of its intention not to renew it.

2. Either Party may terminate this Agreement by providing written notice six months in advance to the other Party.

3. Either Party may, immediately upon written notice to the other Party, suspend the implementation of this Agreement in its entirety for an initial period of up to three months. Such suspension may be renewed for additional periods of up to three months by written notice to the other Party. Either Party may, with the written agreement of the other Party, suspend any part of this Agreement.

4

Uploaded on: 08/08/2025 at 04:40:52 PM (Central Daylight Time) Doc#03/25 INA

4. The Parties may agree in writing to any amendment to this Agreement. When so agreed and approved in accordance with the applicable legal procedures of each Party, an amendment shall constitute an integral part of this Agreement.

5. Nothing in this Agreement shall be interpreted in a manner that obligates the Parties to disburse or commit funds. The implementation of this Agreement shall be subject to the availability of funds and technical capacities of each Party.

**IN WITNESS WHEREOF**, the undersigned, duly authorized by their respective governments, have signed this Agreement.

**DONE** at Washington on the 10 of March, 2025, in duplicate in the English and Spanish languages, both texts being equally authentic.

FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA

Michael G. Kozak
Senior Bureau Official
Bureau of Western Hemisphere Affairs
U.S. Department of State

FOR THE GOVERNMENT OF THE
REPUBLIC OF HONDURAS

Eduardo Enrique Reina García
Foreign Minister
Ministry of Foreign Relations and
International Cooperation

5

Uploaded on: 08/08/2025 at 04:40:52 PM (Central Daylight Time) Filed: 09/03/25 JNA

No.2025-0419

The Embassy of the United States of America in Tegucigalpa presents its compliments to the Ministry of Foreign Relations and International Cooperation of the Republic of Honduras and has the honor to refer to the Agreement between the Government of the United States of America and the Government of the Republic of Honduras for Cooperation in the Examination of Protection Requests, done at Washington March 10, 2025 (the "Agreement").

On behalf of the Government of the United States of America, the Embassy has the honor to propose to amend Article 3 paragraph 3 of the Agreement by replacing that paragraph, in its entirety, with the following:

> "Except for the individuals described in paragraphs 1 and 2 of Article 4 and paragraph 2 of Article 5, Honduras shall examine, in accordance with its Protection Determination System, the Protection Request of any individual who submits such a request in Honduran territory after arriving at a port of entry or crossing a border between ports of entry of the United States. The Parties shall respect the decisions of each in relation to Protection Determinations made in accordance with their respective national laws."

DIPLOMATIC NOTE

**Federal Register** / Vol. 90, No. 128 / Tuesday, July 8, 2025 / Notices     **30083**

2

If this proposal is acceptable to the Government of the Republic of Honduras, the Embassy has the honor to propose that this Note, together with an affirmative reply from the Government of the Republic of Honduras, shall form an agreement between the Government of the United States of America and the Government of the Republic of Honduras to amend the Agreement (the "Amendment"), and that the Amendment shall enter into force upon the date of the reply from the Government of the Republic of Honduras.

The Embassy of the United States of America avails itself of this opportunity to express to the Ministry of Foreign Relations and International Cooperation of the Republic of Honduras the assurances of its highest consideration.

Embassy of the United States of America,

Tegucigalpa, June 25, 2025.



Uploaded on: 03/08/2025 at 04:40:52 PM (Central Daylight Time) Case: 1:25-cv-10525-DJC Document #: 9-7 Filed: 09/03/25 Page 15 of 17 PageID #:162

**30084** **Federal Register** / Vol. 90, No. 128 / Tuesday, July 8, 2025 / Notices



U.S. Department of State
Office of Language Services
Translating Division

LS No.: 2025-0127926-A
Spanish/English
BBM/DK

**TRANSLATION**

## Republic of Honduras
## Secretariat of State of Foreign Affairs and International Cooperation

Note No. 079-DSM-2025

The Secretariat of State of Foreign Affairs and International Cooperation of

the Republic of Honduras presents its compliments to the Embassy of the United

States of America and refers to Embassy note No. 2025-0419, dated June 25,

2025, which reads as follows:

Quote:

The Embassy of the United States of America in Tegucigalpa presents its

compliments to the Secretariat of State of Foreign Affairs and International

Cooperation of the Republic of Honduras and has the honor to refer to the

Agreement between the Government of the United States of America and the

Government of the Republic of Honduras for Cooperation in the Examination of

Protection Requests, done at Washington on March 10, 2025 (the "Agreement").

Embassy of the United States of America,
    Tegucigalpa.

**Federal Register** / Vol. 90, No. 128 / Tuesday, July 8, 2025 / Notices

-2-

On behalf of the Government of the United States of America, the Embassy has the honor to propose to amend Article 3 paragraph 3 of the Agreement by replacing that paragraph, in its entirety, with the following:

"Except for the individuals described in paragraphs 1 and 2 of Article 4 and paragraph 2 of Article 5, Honduras shall examine, in accordance with its Protection Determination System, the Protection Request of any individual who submits such a request in Honduran territory after arriving at a port of entry or crossing a border between ports of entry of the United States. The Parties shall respect the decisions of each in relation to Protection Determinations made in accordance with their respective national laws."

If this proposal is acceptable to the Government of the Republic of Honduras, the Embassy has the honor to propose that this Note, together with an affirmative reply from the Government of the Republic of Honduras, shall form an agreement between the Government of the United States of America and the Government of the Republic of Honduras to amend the Agreement (the "Amendment"), and that the Amendment shall enter into force upon the date of the reply from the Government of the Republic of Honduras.

Uploaded on: 08/08/2025 at 04:40:52 PM (Central Daylight Time) Post 03/25 JNA

-3-

The Embassy of the United States of America avails itself of this opportunity to express to the Ministry of Foreign Relations and International Cooperation of the Republic of Honduras the assurances of its highest consideration.

Unquote.

The Secretariat has the honor to confirm that the Government of the Republic of Honduras accepts the proposal contained in note No. 2025-0419, dated June 25, 2025. Accordingly, that note and this note shall constitute an agreement between the Government of the Republic of Honduras and the Government of the United States to amend the Agreement (the "Amendment") and that this Amendment shall enter into force on the date of this note.

The Secretariat of State of Foreign Affairs and International Cooperation of the Republic of Honduras avails itself of the opportunity to renew to the Embassy of the United States of America the assurances of its high and distinguished consideration.

Tegucigalpa M.D.C., June 25, 2025

[Initialed]

[Ministry stamp]

[FR Doc. 2025–12631 Filed 7–7–25; 8:45 am]
BILLING CODE 9110–9M–C

## DEPARTMENT OF HOMELAND SECURITY

### U.S. Citizenship and Immigration Services

[CIS No. 2819–25; DHS Docket No. USCIS–2014–0006]

RIN 1615–ZB69

### Termination of the Designation of Nicaragua for Temporary Protected Status

**AGENCY:** U.S. Citizenship and Immigration Services (USCIS),

Department of Homeland Security (DHS).

**ACTION:** Notice.

**SUMMARY:** Through this notice, the Department of Homeland Security (DHS) announces that the Secretary of Homeland Security (Secretary) is terminating the designation of Nicaragua for Temporary Protected Status (TPS). The designation of Nicaragua is set to expire on July 5, 2025. After reviewing country conditions and consulting with appropriate U.S. Government agencies,