

Home  >  Immigration  >  Tools  >  Judge Reports

City:  
All Cities

Judge:  
Jody Barilla -- Chicago

Report Series:  
Latest Report (2024)

Frequently Asked Questions

# Judge Jody Barilla
## FY 2019 - 2024, Chicago Immigration Court

Published Nov 7, 2024

Jody L. Barilla was appointed as an immigration judge to begin hearing cases in August 2023. Judge Barilla earned a Bachelor of Arts in 1988 from the Ohio State University and a Juris Doctor in 1992 from Cleveland Marshall College of Law. From 2021 to 2023, she served as the court administrator for the Chicago Immigration Court. From 1997 to 2021, she served as a magistrate at the Lorain County Domestic Relations Court in Elyria, Ohio. During this time, from 2013 to 2021, she also served as the court administrator for the Lorain County Domestic Relations Court. From 1992 to 1997, she worked as an associate attorney with the law firm of Smith & Smith Attorneys. Judge Barilla is a member of the Ohio State Bar.

## Deciding Asylum Cases

Detailed data on decisions by Judge Barilla were examined for the period covering fiscal years 2019 through 2024. During this period, court records show that Judge Barilla decided 178 asylum claims on their merits. Of these, she granted asylum for 109, granted 2 other types of relief, and denied relief to 67. Converted to percentage terms, Barilla denied 37.6 percent and granted 62.3 percent of asylum cases (including forms of relief other than asylum).

Figure 1 provides a comparison of Judge Barilla's denial rate each fiscal year over this recent period. (Rates for years with less than 25 decisions are not shown.)



Figure 1: Percent of Asylum Matters Denied

## Nationwide Comparisons

Compared to Judge Barilla's denial rate of 37.6 percent, Immigration Court judges across the country denied 57.7 percent of asylum claims during this same period. Judges at the Chicago Immigration Court where Judge Barilla decided these cases denied asylum 42.1 percent of the time. See Figure 2.

Judge Barilla's asylum grant and denial rates are compared with other judges serving on the same court in this table. Note that when an Immigration Judge serves on more than one court during the same period, separate Immigration Judge reports are created for any Court in which the judge rendered at least 100 asylum decisions.



Figure 2: Comparing Denial Rates (percents)

## Why Do Denial Rates Vary Among Judges?

Although denial rates are shaped by each Judge's judicial philosophy, denial rates are also shaped by other factors, such as the types of cases on the Judge's docket, the detained status of immigrant

respondents, current immigration policies, and other factors beyond an individual Judge's control. For example, TRAC has previously found that legal representation and the nationality of the asylum seeker are just two factors that appear to impact asylum decision outcomes.

The composition of cases may differ significantly between Immigration Courts in the country. Within a single Court when cases are randomly assigned to judges sitting on that Court, each Judge should have roughly a similar composition of cases given a sufficient number of asylum cases. Then variations in asylum decisions among Judges on the same Immigration Court would appear to reflect, at least in part, the judicial philosophy that the Judge brings to the bench. However, if judges within a Court are assigned to specialized dockets or hearing locations, then case compositions are likely to continue to differ and can contribute to differences in asylum denial rates.

## Representation

When asylum seekers are not represented by an attorney, almost all of them (77%) are denied asylum. In contrast, a significantly higher proportion of represented asylum seekers are successful. In the case of Judge Barilla, 5.6% were not represented by an attorney. See Figure 3. For the nation as a whole, about 16.4% of asylum seekers are not represented.



Figure 3: Asylum Seeker Had Representation

## Nationality

Asylum seekers are a diverse group. Over one hundred different nationalities had at least one hundred individuals claiming asylum decided during this period. As might be expected,

Case: 1:25-cv-10525 Document #: 6-10 Filed: 09/03/25 Page 4 of 10 PageID #:246

immigration courts located in different parts of the country tend to have proportionately larger shares from some countries than from others. And, given the required legal grounds for a successful asylum claim, asylum seekers from some nations tend to be more successful than others.

The largest group of asylum seekers appearing before Judge Barilla came from Russia. Individuals from this country made up 17.4% of her caseload. Other nationalities in descending order of frequency appearing before Judge Barilla were: Nicaragua (16.9%), Mexico (13.5%), India (7.3%), Colombia (5.1%). See Figure 4.

In the nation as a whole during this same period, major nationalities of asylum seekers, in descending order of frequency, were El Salvador (14.0%), Guatemala (13.2%), Honduras (12.4%), Mexico (8.2%), China (6.1%), India (5.4%), Venezuela (4.0%), Ecuador (3.7%), Nicaragua (3.5%), Colombia (2.9%), Cuba (2.6%), Brazil (2.6%), Russia (2.4%).



Figure 4: Asylum Decisions by Nationality

*TRAC is a nonpartisan, nonprofit data research center affiliated with the Newhouse School of Public Communications and the Whitman School of Management, both at Syracuse University. For more information, to subscribe, or to donate, contact trac@syr.edu or call 315-443-3563.*

Subscription     TRAC at Work     Support TRAC



Email Sign Up

© Copyright 2024 TRAC Reports, Inc.

  



## Judge Jennifer A. May
## FY 2019 - 2024, Conroe Immigration Court

Published Nov 7, 2024

Attorney General Jeff Sessions appointed Jennifer A. May to begin hearing cases in October2018. Judge May earned a Bachelor of Arts in 1992 from William Jewell College and a JurisDoctor in 1996 from the University of Missouri-Kansas City School of Law. From 2006 to 2018,she served as an assistant chief counsel for Immigration and Customs Enforcement, Departmentof Homeland Security, in Kansas City, Missouri. From 1999 to 2006, she was an assistantprosecuting attorney for the Clay County Prosecutor's Office, Family Support Division, inLiberty, Missouri. From 1996 to 1999, she was an assistant prosecuting attorney for theLafayette County Prosecutor's Office in Lexington, Missouri. Judge May is a member of theKansas Bar and Missouri Bar.

## Deciding Asylum Cases

Detailed data on decisions by Judge May were examined for the period covering fiscal years 2019 through 2024. During this period, court records show that Judge May decided 140 asylum claims on their merits. Of these, she granted asylum for 14, granted 1 other types of relief, and denied relief to 125. Converted to percentage terms, May denied 89.3 percent and granted 10.7 percent of asylum cases (including forms of relief other than asylum).

Figure 1 provides a comparison of Judge May's denial rate each fiscal year over this recent period. (Rates for years with less than 25 decisions are not shown.)



Figure 1: Percent of Asylum Matters Denied

## Nationwide Comparisons

Compared to Judge May's denial rate of 89.3 percent, Immigration Court judges across the country denied 57.7 percent of asylum claims during this same period. Judges at the Conroe Immigration Court where Judge May decided these cases denied asylum 80.5 percent of the time. See Figure 2.

Judge May's asylum grant and denial rates are compared with other judges serving on the same court in this table. Note that when an Immigration Judge serves on more than one court during the same period, separate Immigration Judge reports are created for any Court in which the judge rendered at least 100 asylum decisions.



Figure 2: Comparing Denial Rates (percents)

## Why Do Denial Rates Vary Among Judges?

Although denial rates are shaped by each Judge's judicial philosophy, denial rates are also shaped by other factors, such as the types of cases on the Judge's docket, the detained status of immigrant respondents, current immigration policies, and other factors beyond an individual Judge's control.

For example, TRAC has previously found that legal representation and the nationality of the asylum seeker are just two factors that appear to impact asylum decision outcomes.

The composition of cases may differ significantly between Immigration Courts in the country. Within a single Court when cases are randomly assigned to judges sitting on that Court, each Judge should have roughly a similar composition of cases given a sufficient number of asylum cases. Then variations in asylum decisions among Judges on the same Immigration Court would appear to reflect, at least in part, the judicial philosophy that the Judge brings to the bench. However, if judges within a Court are assigned to specialized dockets or hearing locations, then case compositions are likely to continue to differ and can contribute to differences in asylum denial rates.

## Representation

When asylum seekers are not represented by an attorney, almost all of them (77%) are denied asylum. In contrast, a significantly higher proportion of represented asylum seekers are successful. In the case of Judge May, 36.4% were not represented by an attorney. See Figure 3. For the nation as a whole, about 16.4% of asylum seekers are not represented.




Figure 3: Asylum Seeker Had Representation

## Nationality

Asylum seekers are a diverse group. Over one hundred different nationalities had at least one hundred individuals claiming asylum decided during this period. As might be expected, immigration courts located in different parts of the country tend to have proportionately larger

shares from some countries than from others. And, given the required legal grounds for a successful asylum claim, asylum seekers from some nations tend to be more successful than others.

The largest group of asylum seekers appearing before Judge May came from Cameroon. Individuals from this country made up 15.7% of her caseload. Other nationalities in descending order of frequency appearing before Judge May were: El Salvador (12.9%), Honduras (10.7%), India (10.7%), Bangladesh (6.4%). See Figure 4.

In the nation as a whole during this same period, major nationalities of asylum seekers, in descending order of frequency, were El Salvador (14.0%), Guatemala (13.2%), Honduras (12.4%), Mexico (8.2%), China (6.1%), India (5.4%), Venezuela (4.0%), Ecuador (3.7%), Nicaragua (3.5%), Colombia (2.9%), Cuba (2.6%), Brazil (2.6%), Russia (2.4%).



Figure 4: Asylum Decisions by Nationality

TRAC is a nonpartisan, nonprofit data research center affiliated with the Newhouse School of Public Communications and the Whitman School of Management, both at Syracuse University. For more information, to subscribe, or to donate, contact trac@syr.edu or call 315-443-3563.

Subscription    TRAC at Work    Support TRAC

Case: 1:25-cv-10525 Document #: 6-10 Filed: 09/03/25 Page 10 of 10 PageID #:252

© Copyright 2024 TRAC Reports, Inc.



