OFFICE OF INSPECTOR GENERAL

# Violations of ICE Detention Standards at Richwood Correctional Center in Monroe, Louisiana


Homeland Security

**February 28, 2023**
OIG-23-18



# OFFICE OF INSPECTOR GENERAL
## Department of Homeland Security

Washington, DC 20528 / www.oig.dhs.gov

February 28, 2023

MEMORANDUM FOR:    Tae D. Johnson
                                 Acting Director
                                 U.S. Immigration and Customs Enforcement

FROM:                   Joseph V. Cuffari, Ph.D.
                                 Inspector General

JOSEPH V CUFFARI — Digitally signed by JOSEPH V CUFFARI Date: 2023.02.28 18:05:12 -05'00'

SUBJECT:            *Violations of Detention Standards at ICE's Richwood Correctional Center in Monroe, Louisiana*

Attached for your action is our final report, *Violations of Detention Standards at ICE's Richwood Correctional Center in Monroe, Louisiana.* We incorporated the formal comments provided by your office.

The report contains eight recommendations aimed at improving care of detainees at ICE's Richwood Correctional Center. Your office concurred with all eight recommendations. We consider one recommendation resolved and closed and seven recommendations resolved and open. Once your office has fully implemented the remaining recommendations, please submit a formal closeout letter to us within 30 days so that we may close the recommendations. The memorandum should be accompanied by evidence of completion of agreed-upon corrective actions. Please send your response or closure request to OIGISPFollowup@oig.dhs.gov.

Consistent with our responsibility under the *Inspector General Act*, we will provide copies of our report to congressional committees with oversight and appropriation responsibility over the Department of Homeland Security. We will post the report on our website for public dissemination.

Please call me with any questions, or your staff may contact Thomas Kait, Deputy Inspector General for Inspections and Evaluations at (202) 981-6000.

Attachment

# DHS OIG HIGHLIGHTS
## Violations of ICE Detention Standards at Richwood Correctional Center in Monroe, Louisiana

**February 28, 2023**

# Why We Did This Inspection

In accordance with the *Consolidated Appropriations Act, 2022*, we conduct unannounced inspections of ICE detention facilities to ensure compliance with detention standards. In June 2022, we conducted an in-person inspection of the Richwood facility in Monroe, Louisiana, to evaluate compliance with ICE detention standards and COVID-19 requirements.

# What We Recommend

We made eight recommendations to improve ICE's oversight of detention facility management and operations at Richwood.

**For Further Information:**
Contact our Office of Public Affairs at (202) 981-6000, or email us at
DHS-OIG.OfficePublicAffairs@oig.dhs.gov

# What We Found

During our unannounced inspection of U.S. Immigration and Customs Enforcement's (ICE) Richwood Correctional Center (Richwood) in Monroe, Louisiana, we found that Richwood complied with standards for detainee classification and segregation, the voluntary work program, and medical care. However, Richwood did not meet all standards for facility conditions, grievances, staff-detainee communications, and legal visitations and calls. We identified violations that compromised the health, safety, and rights of detainees, including facility areas that were not consistently clean or sanitary. Additionally, Richwood did not have a reliable system for detainees to file grievances and did not allow detainees to file medical grievances. Staff-detainee communications were also deficient. Further, Richwood did not track detainee requests or maintain records of requests in detainee files, and staff did not consistently provide timely responses to detainee communications or ensure communications were in a language detainees could understand. We also found that Richwood restricted detainees' access to legal visitation and calls without providing justification. Richwood took measures to prevent the spread of COVID-19. Finally, ICE paid for unused bedspace because its population did not meet the guaranteed minimum outlined in the contract with Richwood.

# ICE Response

ICE concurred with all eight recommendations. We consider one recommendation resolved and closed and seven recommendations resolved and open.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

# Table of Contents

Introduction ............................................................................. 3

Background ............................................................................. 3

Results of Inspection ............................................................... 4

    Richwood Complied with Standards for Detainee Classification and Segregation ............................................................... 4

    Richwood Complied with Standards for the Voluntary Work Program but Allowed One Detainee to Participate without Completing Necessary Paperwork ............................................... 5

    Richwood Provided Sufficient Medical Care to Detainees ........................ 6

    Richwood Violated ICE Standards for Living Conditions in Some Areas of the Facility ............................................... 6

    Grievance Practices at Richwood Were Deficient .................................... 9

    Staff-Detainee Communication Practices at Richwood Were Deficient ... 11

    Richwood Complied with Some Standards for Access to Legal Services but Restricted Legal Visitation and Calls Without Justification ................................................................ 15

    Richwood Took Measures to Prevent the Spread of COVID-19 .............. 17

    ICE's "Guaranteed Minimum" Contract with Richwood Resulted in ICE Paying for Unused Bed Space ...................................... 17

Recommendations ..................................................................... 18

Management Comments and OIG Analysis ..................................... 20

## Appendixes

    Appendix A:  Objective, Scope, and Methodology ................................ 25
    Appendix B:  ICE Comments to the Draft Report .................................. 27
    Appendix C:  Office of Inspections and Evaluations Major Contributors to This Report ............................................ 33
    Appendix D:  Report Distribution ...................................................... 34



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## Abbreviations

| | |
|---|---|
| ERO | Enforcement and Removal Operations |
| ICE | U.S. Immigration and Customs Enforcement |
| PBNDS 2011 | *Performance-Based National Detention Standards 2011* |
| Richwood | Richwood Correctional Center |



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

# Introduction

U.S. Immigration and Customs Enforcement (ICE) houses detainees at roughly 130 facilities nationwide, and the conditions and practices at those facilities can vary greatly. ICE must comply with detention standards and establish an environment that protects the health, safety, and rights of detainees. Our program of unannounced inspections of ICE detention facilities has identified and helped correct violations of the *Performance-Based National Detention Standards 2011* (PBNDS 2011) at facilities across the country. From June 28 through June 30, 2022, we conducted an unannounced, in-person inspection of Richwood Correctional Center (Richwood) in Monroe, Louisiana, and identified concerns regarding detainee care and treatment.

# Background

ICE apprehends, detains, and removes noncitizens who are in the United States unlawfully. As mandated by Congress,[1] we conduct unannounced inspections of ICE detention facilities to ensure compliance with detention standards. ICE Enforcement and Removal Operations (ERO) oversees the detention facilities it manages in conjunction with private contractors or state or local governments. Operated by LaSalle Corrections, Richwood began housing detainees in 2019. Between October 1, 2021, and September 29, 2022, Richwood had an average daily population of 399 detainees with a maximum capacity of 1,129.

ICE's intergovernmental service agreement[2] requires Richwood to comply with the PBNDS 2011, as revised in December 2016. According to ICE, the PBNDS 2011 establishes consistent conditions of detention, program operations, and management expectations within ICE's detention system. These standards set requirements in areas such as:

- environmental health and safety, including cleanliness, sanitation, security, detainee searches, segregation, and disciplinary systems;
- detainee care, e.g., food service, medical care, and personal hygiene;
- activities, including visitation and recreation; and
- grievance systems.

---

[1] *Consolidated Appropriations Act, 2022,* Pub. L. No. 117-103, Division F; *Department of Homeland Security Appropriations Act, 2022,* H.R. Rep. No. 117-87 (2021).
[2] The parties in the agreement include ICE and the service provider Town of Richwood, Louisiana.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

From June 28 through June 30, 2022, we conducted an unannounced, in-person inspection of Richwood to determine compliance with the PBNDS 2011. At the start of our inspection, Richwood housed a total of 497 adult male ICE detainees and no female detainees. Our onsite inspection team included medical experts we contracted with to review Richwood's compliance with applicable medical standards of care,[3] and we have incorporated their assessments in our findings. Based on the contract with ICE, Richwood receives nearly $2 million a month to house ICE detainees. During our inspection, we conducted a walk-through of Richwood facilities, including detainee housing units, medical units, and indoor and outdoor recreation areas. We also requested and reviewed documents and files, and interviewed ICE personnel, Richwood officials, and detainees.

## Results of Inspection

During our unannounced inspection, we found that Richwood complied with standards for detainee classification and segregation, the voluntary work program, and medical care. However, Richwood did not meet all standards for facility conditions, grievances, staff-detainee communications, and legal visitations and calls. We identified violations that compromised the health, safety, and rights of detainees, including facility areas that were not consistently clean or sanitary. Additionally, Richwood did not have a reliable system for detainees to file grievances and did not allow detainees to file medical grievances. Staff-detainee communications were also deficient at Richwood. Further, Richwood did not track detainee requests or maintain records of requests in detainee files, and staff did not consistently provide timely responses to detainee communications or ensure communications were in a language detainees could understand. We also found that Richwood restricted detainees' access to legal visitation and calls without providing justification. Richwood took measures to prevent the spread of COVID-19. Finally, ICE paid for unused bedspace because its population did not meet the guaranteed minimum outlined in the contract with Richwood.

## Richwood Complied with Standards for Detainee Classification and Segregation

According to the PBNDS 2011, facilities must classify detainees according to risk level and house them with others of similar background and criminal history to ensure separation of high risk and low risk detainees.[4] Richwood complied with the standard for classifying and housing detainees. During our

---

[3] In addition to the PBNDS 2011, our medical contractors used the National Commission on Correctional Health Care's 2018 *Standards for Health Services in Jails.*
[4] PBNDS 2011, Section 2.2, *Custody Classification System* (revised Dec. 2016).



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

inspection, Richwood only housed detainees who were classified as low or medium-low risk, so there was no risk of comingling. We also found the facility conducted its initial classification and reclassification in a complete and timely manner.

The PBNDS 2011 governs the use of administrative and disciplinary segregation at detention centers.[5] In the 6 months prior to our inspection, Richwood did not segregate detainees for disciplinary reasons and used administrative segregation only once by holding two detainees overnight, pending the outcome of an investigation into a disagreement in their housing unit. Richwood also used the segregation cells to house detainees for medical observation or quarantine. We reviewed the administrative segregation files for those two detainees and files for detainees who were administratively segregated for medical reasons during our spot inspection. In both reviews, we determined Richwood complied with the PBNDS 2011 segregation standard.

## Richwood Complied with Standards for the Voluntary Work Program but Allowed One Detainee to Participate without Completing Necessary Paperwork

Richwood also complied with PBNDS 2011 standards for providing detainees the opportunity to work and earn money through the voluntary work program.[6] Facility staff gave detainees the information needed to make an informed decision on whether to participate in the program. Those who chose to participate received training specific to their work function, and payments were made directly into their detainee accounts, in accordance with PBNDS 2011 standards. We determined at least one detainee was being paid to provide interpretation services for other detainees but had not completed the necessary paperwork to take part in the voluntary work program. After we brought this to the attention of Richwood staff, Richwood issued guidance stating detainees

---

[5] PBNDS 2011, Section 2.12, *Special Management Units* (revised Dec. 2016). Segregation is the process of separating certain detainees from the general population for disciplinary or administrative reasons. Detainees in disciplinary segregation can be held for no more than 30 days per incident, except in extraordinary circumstances. Detainees in disciplinary segregation are allowed out of their cells for at least 1 hour of recreation time at least 5 days a week. Detainees in administrative segregation can be held until their safety, and the safety of others, is no longer a concern. Detainees in administrative segregation are allowed out of their cells for at least 2 hours of recreation time, 7 days a week. Detainees in both disciplinary and administrative segregation are also allowed time out of their cells for showers, phone calls, use of the law library, visitation, and religious services when offered.
[6] PBNDS 2011, Section 5.8, *Voluntary Work Program* (revised Dec. 2016).



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

are not to provide interpretation services. Instead, Richwood staff should rely on language services providers for interpretation services.[7]

## Richwood Provided Sufficient Medical Care to Detainees

We found that Richwood met PBNDS 2011 standards for medical care[8] by providing sufficient access to, and quality of medical care to, meet the general needs of the detainee population. We contracted with medical experts to review facility medical practices, and they determined care was delivered in a timely and appropriate manner. Although Richwood had no plan for management of ectoparasites (such as lice or scabies), as required,[9] our contracted medical experts discussed this issue with facility medical staff and received a copy of an acceptable plan after our inspection. Finally, our contracted medical experts determined the medical grievance system at Richwood was deficient. This report addresses all grievance system deficiencies, including medical, in a later section.

## Richwood Violated ICE Standards for Living Conditions in Some Areas of the Facility

Although the PBNDS 2011 requires "maintaining high facility standards of cleanliness and sanitation,"[10] our inspection found that clean and sanitary conditions were not always present in some housing units. We observed poor conditions in housing units and detainees wearing stained clothing.

### Parts of Some Housing Units Were in Poor Condition

According to the PBNDS 2011, detainees must have sufficient clean clothing[11] and clean living conditions.[12] However, we observed rusted storage drawers and support frames on bunks in detainee housing units, and air vents in two housing units were covered in dust, as shown in Figures 1 and 2.

---

[7] All detention facilities have access to ICE ERO language services providers for interpretation services. *ICE Language Access Plan, Supplemental Update Covering Fiscal Years 2019 and 2020*, Jul. 21, 2020.
[8] PBNDS 2011, Section 4.3, *Medical Care* (revised Dec. 2016).
[9] National Commission on Correctional Health Care's 2018 *Standards for Health Services in Jails*, J-B-02.
[10] PBNDS 2011, Section 1.2, *Environmental Health and Safety* (revised Dec. 2016).
[11] PBNDS 2011, Section 4.5, *Personal Hygiene* (revised Dec. 2016).
[12] PBNDS 2011, Section 1.2, *Environmental Health and Safety* (revised Dec. 2016).



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

 

**Figures 1 and 2. Rusted Bed Drawer (left) and Dust-Covered Air Vents (right), Observed in Detainee Housing on June 28, 2022**

*Source:* Department of Homeland Security Office of Inspector General photos

Also, detainee showers in two of four housing units visited were unclean and had low water pressure when multiple showers were in use. Specifically, detainee showers had blackened tile grout and other stained areas, as shown in Figures 3 and 4. Multiple detainees said that small insects emerge from cracks in the shower walls when the area is dry, but our inspectors were unable to verify this allegation while onsite. Richwood staff cleaned the air vents and pressure washed both showers while our inspectors were onsite. Also, facility staff said renovations to the detainee shower and bathroom facilities were pending but did not provide a schedule for when this would occur.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

 

**Figures 3 and 4. Showers in Detainee Housing Areas with Stains and Discolored Grout, Observed on June 28, 2022**

*Source:* DHS OIG photos

## Some Detainee Clothing Was Stained and Damaged

The PBNDS 2011 requires facilities to provide clean clothing, bedding, linens, and towels, as well as personal hygiene items, to ensure that each detainee can maintain acceptable personal hygiene practices.[13]  Detainees in housing units showed us stained clothing and ragged, dirty socks, as shown in Figures 5 and 6, and told us their laundry returns from the wash with rust stains, burn marks, and a foul odor.  The laundry supervisor said some clothing was not dried thoroughly because the detainees were filling the laundry bags too full. He said he attempted to educate the detainees about the correct way to fill the laundry bags, but they continued the practice of overfilling, resulting in damp clothing.  Detainees explained that neither Richwood laundry services nor handwashing could remove the rust stains or burn marks.

---

[13] PBNDS 2011, Section 4.5, *Personal Hygiene* (revised Dec. 2016).



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security





**Figures 5 and 6. Detainees Holding Clothing Burned by Facility Laundry Dryers (left) and Ragged, Dirty Socks (right), Observed on June 28, 2022**
*Source:* DHS OIG photos

We observed other detainees wearing torn and damaged clothing and footwear. Detainees said they used the electronic tablets available in the housing units to file requests for replacement clothing and footwear, but the requests went unanswered. The laundry supervisor told our inspectors he provides detainees with new clothing when they request it. However, we reviewed the last 50 requests detainees made to laundry via the tablets and found the facility staff had not responded to any requests for 39 consecutive days. The laundry supervisor did not respond to our multiple follow-up emails asking why the tablet requests went unanswered. Detainees need bedding and clothing that meet the standard in order to have suitable living conditions during their stay at Richwood.

## Grievance Practices at Richwood Were Deficient

We determined Richwood was not meeting standards for the grievance system. Richwood staff treated all detainee communications as requests and did not provide a reliable way for detainees to file formal or informal grievances,



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

contrary to PBNDS 2011 requirements. Further, the Richwood detainee handbook did not include instructions on how to file grievances via the tablets or kiosks available in the housing units. We also determined Richwood was unprepared to process potential grievance appeals. Finally, Richwood treated all medical requests as "sick call" and did not allow detainees to file medical grievances.

### Richwood Classified All Detainee Communications as Requests and Did Not Provide a Way for Detainees to File Formal or Informal Grievances

The PBNDS 2011 distinguishes between detainee requests and grievances[14] and provides standards for each type of communication. Specific to grievances, the PBNDS 2011 requires facilities to track and log all grievances filed by detainees.[15] At Richwood, staff treated all detainee communications as requests and did not provide a reliable way for detainees to file formal or informal grievances. When our inspectors asked to view the grievance log, facility staff reported they had not received a grievance from a detainee since July 8, 2021. To determine how a facility could not receive any grievances in nearly a year, we analyzed the grievance process at Richwood. Detainees filed grievances via an electronic system called JailATM using tablets or kiosks in housing areas. From an initial menu, they could select "Grievances" or "Inquiries" (i.e., requests) and then choose from 16 options for where to send the communication (classification, law library, property, etc.). However, JailATM categorized all detainee communications as inquiries and routed them through the request process, regardless of whether a detainee selected "Grievances" or "Inquiries" on the initial menu.

### Richwood Did Not Instruct Detainees How to File Grievances Electronically and Did Not Routinely Provide Access to Paper Forms

The Richwood detainee handbook did not include instructions on how to file grievances via the JailATM system on tablets or kiosks available in the housing units. Rather, the detainee handbook states "[grievance] forms may be obtained from the shift lieutenant" and "grievances are to be placed in the grievance box located in your housing unit." Facility staff said detainees can request forms from control room staff, but only one of four housing unit control rooms we visited had paper grievance forms. No housing units had grievance forms located within the housing unit and thus directly available to detainees during our walk-through. The grievance officer said she checks the housing

---

[14] A request is any detainee communication to staff in which a detainee makes a request or asks a question. A grievance is a complaint based on a circumstance or incident perceived as unjust.
[15] PBNDS 2011, Section 6.2, *Grievance System* (revised Dec. 2016).



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

unit grievance boxes every other day but that Richwood has received neither paper nor electronic grievances since July 2021.

### Richwood Was Unprepared to Process Potential Grievance Appeals

We also determined Richwood was unprepared to process potential grievance appeals. The PBNDS 2011 requires facilities to have a grievance appeals board and a process by which detainees can file an appeal to a grievance response.[16] Richwood policy describes a grievance appeal process consisting of three levels of review (consistent with the PBNDS 2011): (1) grievance officer review, (2) grievance appeals board review, and (3) appellate review. Our inspectors located documentary evidence that Richwood may have had a "grievance committee" in the past. However, three of four staff members named on the document were no longer at the facility. Also, the grievance officer, whose name was not on the grievance committee roster, was unaware of the appeal process or the grievance appeals board and said she had never processed an appeal because there had been no grievances in the last year.

### Richwood Treated All Medical Requests as Sick Call Requests and Did Not Allow Detainees to File Medical Grievances

Richwood treated all medical requests as sick call requests[17] and did not allow detainees to file medical grievances. The Richwood detainee handbook states, in accordance with the PBNDS 2011[18] and Richwood policy, that detainees may file a medical grievance directly to medical personnel. However, Richwood did not have any medical grievance forms available in any housing unit we visited, thus impeding the filing of medical grievances by detainees. Because all medical issues raised by detainees were treated as sick call requests, it is impossible to determine how many detainees wanted to file a medical grievance at Richwood but could not.

## Staff-Detainee Communication Practices at Richwood Were Deficient

We determined Richwood did not meet standards for staff-detainee communication practices. The detainee handbook did not include instructions on how to file requests via the JailATM tablets or kiosks available in the

---

[16] *Id.*

[17] Sick call requests are detainee medical complaints and are required to be submitted in person to the registered nurse on duty between 6 a.m. and 8 a.m., during sick call rounds to detainee housing units. Detainees are instructed to provide identification and the nature of their complaint to the nurse, who then arranges appointments with medical providers.

[18] PBNDS 2011, Section 6.2, *Grievance System* (revised Dec. 2016).



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

housing units, and forms used to communicate with staff were not readily accessible to detainees. In addition, Richwood's system for submitting detainee requests was unclear and only available in English, in violation of standards. Also, although the JailATM system maintains an electronic log, Richwood staff members were generally unable to access it, and facility staff did not track detainee requests or maintain records of requests in detainee files. Finally, staff responses to detainee communications were not consistently provided within the required 3-day timeframe.

## Richwood Did Not Instruct Detainees How to File Requests Electronically and Did Not Routinely Provide Access to Paper Forms

The PBNDS 2011 requires facilities to allow detainees to submit written questions, requests, grievances, or concerns using the detainee request form, a facility form, or a sheet of paper.[19] Facilities must also have envelopes and writing implements available. Additionally, the facility handbook must advise detainees of the procedures to communicate with staff. However, Richwood did not instruct detainees how to file requests electronically and did not routinely provide access to paper forms. The Richwood detainee handbook did not include instructions on how to file requests via the JailATM system on tablets or kiosks available in the housing units. Richwood does not routinely use paper forms for requests, and as such, detainees must submit requests electronically. Forms or writing supplies were not available in the housing units during our facility walk-through. Facility staff said detainees can request forms and writing supplies from control room staff, but those individuals could not produce a paper request form when asked by our inspectors. The facility grievance officer said Richwood logged paper requests at one time, but no longer does.

## The Richwood System for Submitting Detainee Requests Was Unclear and Only Available in English

Standards require all written materials provided to detainees to generally be translated into Spanish and that detainees have frequent opportunities for informal communications with key facility staff members in a language they can understand.[20] Although the main menu of the tablets and kiosks offered options in both English and Spanish, some submenu options were only available in English. For example, as shown in Figure 7, when a detainee selected the Spanish option for inquiry, "Consulta," the subcategories for where to send the communication all appeared in English, resulting in detainees routinely submitting requests to the wrong recipient.

---

[19] PBNDS 2011, Section 2.13, *Staff-Detainee Communication* (revised Dec. 2016).
[20] *Id.*



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security



**Figure 7. Kiosk Screen with "Consulta" Option Selected, Displaying Subcategories in English, Observed on June 28, 2022**
*Source:* DHS OIG photo

The English-only menu may prove challenging for non-English speaking detainees when they are choosing where to direct their request. Detainees could not use the detainee handbook for assistance in deciphering the subcategories because, as previously described, it did not contain instructions for filing requests electronically.

**Richwood Was Generally Unable to Access Request Logs and Did Not Track Detainee Requests or Maintain Records of Requests in Detainee Files**

The PBNDS 2011 requires facilities to record all detainee requests in a log and to maintain a copy of each request in a detainee's detention file for a minimum of 3 years.[21] Richwood's JailATM system maintains an electronic log, but Richwood staff were generally unable to access the log. In response to our

---

[21] *Id.*



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

request for 6 months of detainee request logs, Richwood staff produced a logbook containing detainee requests specifically routed to ICE. To obtain other facility logs, OIG met with five Richwood department supervisors. However, they did not know how to produce the electronic log or any associated reports. Ultimately, one of our inspectors accessed the JailATM system and instructed Richwood staff on how to produce an electronic copy of detainee requests, but the logs produced did not contain all of the elements required by the PBNDS 2011. Finally, only one of the five departments we spoke with was placing printed copies of requests in detention files.

**Richwood Did Not Always Provide Timely Responses to Detainee Requests or Ensure Communications Were in a Language Detainees Could Understand**

The PBNDS 2011 requires facilities to respond to requests within 3 business days of receipt. Our inspectors reviewed the last 50 detainee requests from five facility departments and determined responses were not always provided within the required 3-day timeframe. Specifically, we found that for the 250 detainee requests we reviewed, 111 (44 percent) received untimely responses or no responses from Richwood staff. Notably, two of the five departments did not respond to any detainee requests for 33 days (property) and 39 days (laundry), respectively.[22] When asked about the delayed response, the property supervisor stated he was responsible for multiple Richwood departments and was trying to "juggle multiple tasks." The laundry supervisor did not respond to our multiple outreach attempts. For ICE-specific requests, ICE personnel did not respond to 6 requests out of 50 reviewed, though all responses were timely when they did respond. According to staff, detainees can close out their requests if they respond to their own submissions in JailATM, and this would prevent the facility from being notified of an outstanding request. This software feature may cause detainees to unintentionally close out requests and prevent facility staff, including ICE, from effectively communicating with detainees and resolving complaints.

---

[22] The Richwood laundry department did not respond to detainee requests from May 6, 2022, to June 14, 2022. The Richwood property department did not respond to detainees between May 11, 2022, and June 13, 2022.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## Richwood Complied with Some Standards for Access to Legal Services but Restricted Legal Visitation and Calls Without Justification

The PBNDS 2011 requires facilities to ensure detainees have access to courts,[23] counsel,[24] legal rights groups,[25] legal materials,[26] legal telephone calls,[27] and the law library.[28]  Our review of Richwood's policies, guidance, and records showed the facility complied with standards for access to legal rights groups, legal materials, and the law library.  Legal rights groups visit the facility periodically to give in-person legal rights presentations, and one such presentation occurred shortly after our visit.  Detainees had access to a law library where they could use a printer or portable flash drive to save legal work.

However, Richwood restricted legal visitation without providing justification.  The PBNDS 2011 requires facilities to allow legal visitation 7 days a week, for at least 8 hours per day on weekdays and 4 hours per day on weekends and holidays.[29]  If visitation is restricted, facilities must document the reason for the restriction.  Facilities must specify the hours for visitation and post this information in detainee housing units, the legal visitation area, and the detainee handbook.  At Richwood, the hours cited for legal visitation differed in postings throughout the facility, the detainee handbook, and email communications with lawyers who represent detainees housed at the facility, as shown in Figure 8.  Notably, postings throughout the facility impermissibly listed the legal visitation hours as "by appointment only" for holidays.  The detainee handbook contained different information, and facility staff emails to detainee legal representatives differed from both the posters and the handbook and did not specify available hours for weekends and holidays.

---

[23] PBNDS 2011, Section 6.3, *Law Libraries and Legal Material* (revised Dec. 2016).
[24] PBNDS 2011, Section 5.7, *Visitation* (revised Dec. 2016).
[25] PBNDS 2011, Section 6.4, *Legal Rights Group Presentations* (revised Dec. 2016).
[26] PBNDS 2011, Section 6.3, *Law Libraries and Legal Material* (revised Dec. 2016).
[27] PBNDS 2011, Section 5.6, *Telephone Access* (revised Dec. 2016).
[28] PBNDS 2011, Section 6.3, *Law Libraries and Legal Material* (revised Dec. 2016).
[29] PBNDS 2011, Section 5.7, *Visitation* (revised Dec. 2016).



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

**Figure 8. Cited Hours for Legal Visitation Differed across Facility Postings, the Detainee Handbook, and Emails to Legal Representatives**



**Wall Posters**

Monday–Friday:
8 a.m. to 4 p.m.

Weekends:
12 to 4 p.m.

Holidays:
By appointment



**Handbook**

Monday–Friday:
generally, between
8 a.m. to 4 p.m.

Weekends:
4 hours per day

Holidays:
4 hours per day



**Emails**

Monday–Friday:
8:30 a.m. to 3 p.m.

Weekends:
No hours cited

Holidays:
No hours cited

*Source:* DHS OIG analysis of Richwood documents

Richwood also placed restrictions on legal calls without justification, even though the standards forbid facilities from automatically restricting the duration of legal calls unless necessary for security or fair telephone access. Richwood emailed attorneys who provide legal services to detainees with restrictions on how they can request calls, the hours calls can occur, and the permitted duration of calls. Specifically, Richwood stipulated:

- Requests for legal calls must be submitted 24 hours in advance.
- Legal calls must be confirmed before 3 p.m.
- Legal calls must occur before 10 a.m. or after 10:30 a.m., but no later than 2 p.m., and must end before 3 p.m.
- Legal calls are limited to 30 minutes.
- The facility will not initiate legal calls for detainees.
- Attorneys or legal representatives must call in 10–15 minutes prior to scheduled appointments.

Attorneys who provide legal services to detainees at Richwood complained that Richwood's legal visitation and call policies made it difficult to meet with detainees and appeared to be arbitrary and meant to discourage meaningful legal representation. Moreover, we observed that the required postings in the housing units of telephone numbers for free legal service providers were



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

outdated, although facility staff members remedied this by posting updated phone lists after we brought it to their attention. Richwood must ensure that it provides fair access to legal visits and calls without unnecessary restrictions.

## Richwood Took Measures to Prevent the Spread of COVID-19

ICE's *Pandemic Response Requirements*[30] sets forth expectations and ensures facilities housing ICE detainees have a COVID-19 mitigation plan that protects employees, detainees, and others from exposure to the virus. Richwood provided detainees with appropriate personal protective equipment, including masks. Also, Richwood had a program in place to ensure the timely administration of vaccines. Between April 8, 2021, and June 29, 2022, Richwood administered 1,183 COVID-19 vaccination doses to detainees.

## ICE's "Guaranteed Minimum" Contract with Richwood Resulted in ICE Paying for Unused Bed Space

ICE's contract with Richwood requires ICE to pay for space for a guaranteed minimum of 677 detainees at a daily rate of $95 per detainee, with the daily rate decreasing to $55 per detainee for any detainee housed in excess of the daily minimum. We determined ICE paid more than $8.5 million for unused bed space under the guaranteed minimum for a 1-year period (July 1, 2021, to June 20, 2022). As shown in Figure 9, for 10 of the 12 months, Richwood's detainee population remained below the 677 detainees ICE pays for at the minimum threshold established by the guaranteed minimum contract.

---

[30] ICE ERO, *COVID-19 Pandemic Response Requirements* (Version 9.0, Jun. 13, 2022).



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

**Figure 9. ICE Detainee Population at Richwood from July 1, 2021, to June 20, 2022**



*Source:* DHS OIG analysis of data provided by Richwood

Furthermore, as of April 29, 2022, ICE reduced the number of detainees allowed in housing units based on the required toilet-washbasin-and-shower ratio. As a result of this reduction, Richwood's capacity was reduced from 821 to 660 detainees until the facility adds additional toilets, washbasins, and showers. Consequently, Richwood's capacity is 17 detainees below the contractual guaranteed minimum, resulting in ICE spending money on bed space that is not available.

## Recommendations

We recommend the Executive Associate Director of Enforcement and Removal Operations direct the New Orleans Field Office, responsible for Richwood, to:

**Recommendation 1:** Provide training and guidance for facility staff on the use of language line translation services.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

**Recommendation 2:** Ensure facility conditions we identified as deficient (rusted bunks, shower water pressure, and detainee clothing) are corrected and provide proof of scheduled renovations.

**Recommendation 3:** Comply with the PBNDS 2011 grievance standard by:

 a. ensuring detainees have access to paper grievance forms, including medical grievance forms, and can submit paper or electronic grievances;

 b. ensuring detainees can submit medical grievances directly to medical staff;

 c. establishing a grievance appeals board;

 d. updating the facility handbook to accurately reflect grievance process; and

 e. conducting training for the facility grievance officer and other department leads on processes for all grievances (including informal, formal, medical, and emergency), grievance appeals, and appellate review.

**Recommendation 4:** Establish a grievance tracking system to ensure timely responses to all detainee grievances filed at Richwood.

**Recommendation 5:** Comply with the PBNDS 2011 staff-detainee communication standard by:

 a. ensuring detainees can access paper request forms and can submit paper or electronic requests to ICE and facility staff;

 b. ensuring detainees have opportunities to communicate requests and receive responses in a language they can understand; and

 c. maintaining copies of each completed detainee request in detainees' detention files.

**Recommendation 6:** Establish a request tracking system to ensure timely responses to all detainee requests filed at Richwood, with a complete request log.

**Recommendation 7:** Ensure detainees are permitted unrestricted legal visitation, when appropriate, and establish a process for documenting justification of any instances in which legal calls or visitation is restricted.

**Recommendation 8:** Immediately modify the Richwood contract to decrease the guaranteed minimum to only pay for available bed space while the facility is unable to meet the contractual minimum. Then, review and update ICE's contract with Richwood by better identifying housing requirements and determining whether guaranteed minimums are necessary.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## Management Comments and OIG Analysis

In response to our draft report, ICE concurred with all eight recommendations and described corrective actions to address the issues we identified. Appendix B contains ICE's management comments in their entirety. We also received technical comments on the draft report and made revisions as appropriate.

We consider one recommendation resolved and closed and seven recommendations resolved and open. A summary of ICE's response to our recommendations and our analysis follows.

**Recommendation 1:** Provide training and guidance for facility staff on the use of language line translation services.

**ICE Response to Recommendation 1:** Concur. Richwood provided language line translation services training to the detention facility staff on August 23, 2022, and to the medical staff on October 2, 2022. ICE provided documentation corroborating these efforts under a separate cover on December 22, 2022. ICE requests that OIG consider this recommendation resolved and closed, as implemented.

**OIG Analysis:** We consider these actions responsive to the recommendation, which is resolved and closed. ICE provided evidence showing the guidance for staff on the use of language line translation services.

**Recommendation 2:** Ensure facility conditions we identified as deficient (rusted bunks, shower water pressure, and detainee clothing) are corrected and provide proof of scheduled renovations.

**ICE Response to Recommendation 2:** Concur. On November 5, 2022, Richwood introduced a new cleaning schedule identifying 17 different cleaning tasks that must be performed and checked off the list each day. After all tasks have been completed, the employee assigned the duty must sign and date the cleaning schedule, verifying that all cleaning tasks have been performed for that day. Further, the bathroom/shower areas in all housing units are currently scheduled for renovations, which are already underway. At this time, one bathroom/shower area renovation was completed in October 2021, and another is near completion. ICE provided documentation corroborating the efforts to date under a separate cover on December 22, 2022. Estimated Completion Date (ECD): December 29, 2023.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

**OIG Analysis:** We consider these actions partially responsive to the recommendation, which is resolved and open. ICE provided photographic evidence that one shower area renovation was completed. We will close this recommendation once ICE provides documentation showing additional bathroom and shower renovations and evidence that the other conditions identified as deficient (rusted bunks in housing units and stained and damaged detainee clothing) have been addressed.

**Recommendation 3:** Comply with the PBNDS 2011 grievance standard by:

a. ensuring detainees have access to paper grievance forms, including medical grievance forms, and can submit paper or electronic grievances;

b. ensuring detainees can submit medical grievances directly to medical staff;

c. establishing a grievance appeals board;

d. updating the facility handbook to accurately reflect grievance process; and

e. conducting training for the facility grievance officer and other department leads on processes for all grievances (including informal, formal, medical, and emergency), grievance appeals, and appellate review.

**ICE Response to Recommendation 3:** Concur. As of October 26, 2022, Richwood detainees can submit paper and electronic grievances directly to medical staff, Richwood staff, or ICE ERO officers. Detainees can access the grievance system through the tablets located in every housing unit and obtain paper forms from the "duty bubble" and Richwood staff. Richwood's policy, consistent with the PBNDS 2011, outlines the grievance appeal process consisting of three review levels: (1) grievance officer review; (2) grievance appeals board review; and (3) appellate review. Currently, ICE ERO Field Office management is working on reconstituting the grievance appeals board and designating officials. Once this is completed, the facility handbook will be updated, and training will be provided to the facility grievance officer and other department leads on the grievance process. ECD: March 31, 2023.

**OIG Analysis:** We consider these actions partially responsive to the recommendation, which is resolved and open. We will close this recommendation when ICE provides evidence showing that all aspects of the recommendation have been addressed.

**Recommendation 4:** Establish a grievance tracking system to ensure timely responses to all detainee grievances filed at Richwood.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

**ICE Response to Recommendation 4:** Concur. On August 23, 2022, the facility administrator sent a "statement of fact" to all Richwood staff indicating that all grievances and related communication must be addressed appropriately and within 5 calendar days, consistent with the PBNDS 2011. ERO Field Office management also regularly monitors grievances to ensure timely responses by Richwood staff and to also make certain there is a tracking mechanism for grievances that is overseen by ERO Field Office management. ICE provided documentation corroborating these efforts under a separate cover on December 23, 2022. ICE requests that OIG consider this recommendation resolved and closed, as implemented.

**OIG Analysis:** We consider these actions responsive to the recommendation, which is resolved and open. We acknowledge the "statement of fact" from Richwood, which stated that all communication between staff and detainees about grievances must be performed electronically and in a timely manner. We will close this recommendation when we receive copies of 2 months of grievance logs demonstrating the response timeliness attested to in the "statement of fact."

**Recommendation 5:** Comply with the PBNDS 2011 staff-detainee communication standard by:

a. ensuring detainees can access paper request forms and can submit paper or electronic requests to ICE and facility staff;

b. ensuring detainees have opportunities to communicate requests and receive responses in a language they can understand; and

c. maintaining copies of each completed detainee request in detainees' detention files.

**ICE Response to Recommendation 5:** Concur. As of June 2022, paper detainee request forms are in every "duty bubble" within the detention facility for detainees to access. In addition, following the OIG inspection, ERO Field Office management provided guidance to detainees on how to request paper forms from Richwood staff and, if the detainee speaks a language other than English or Spanish, directed that the form be translated using the language line translation services, as appropriate. ERO officers also place completed detainee request forms in the detainees' detention files, which are maintained electronically. ICE provided documentation corroborating these efforts under a separate cover on December 22, 2022. ICE requests that OIG consider this recommendation resolved and closed, as implemented.

**OIG Analysis:** We consider these actions responsive to the recommendation, which is resolved and open. ICE provided photographic evidence that paper request forms were available in one control room. We will close this



recommendation when we receive 2 months of request logs demonstrating that detainees are receiving responses in a language they can understand and evidence showing that completed requests are being placed in the detention files.

**Recommendation 6:** Establish a request tracking system to ensure timely responses to all detainee requests filed at Richwood, with a complete request log.

**ICE Response to Recommendation 6:** Concur. All detainee requests at Richwood are tracked and monitored electronically. Detainee request logs can be obtained from the system at any time to analyze the response time and completion. Consistent with the PBNDS 2011, Richwood will maintain records of all detainee requests in a log and for a retention period of a minimum of 3 years. Additionally, the onsite ERO supervisory detention and deportation officer has been tasked with tracking and monitoring detainee requests to ensure they are appropriately answered within the required 3 business days. As of June 2022, if a request is completed via paper form, the information is recorded and maintained in a log on a shared drive for all ERO officers to readily access and update as needed. ICE provided documentation corroborating these efforts under a separate cover on December 22, 2022. ICE requests that OIG consider this recommendation resolved and closed, as implemented.

**OIG Analysis:** We consider these actions responsive to the recommendation, which is resolved and open. ICE provided a copy of the request log, but again, only for detainee requests made specifically to ICE. We will close this recommendation when we receive 2 months of request logs for both paper and electronic requests, demonstrating that Richwood is tracking all detainee requests, not just those directed to ICE, and that responses are timely.

**Recommendation 7:** Ensure detainees are permitted unrestricted legal visitation, when appropriate, and establish a process for documenting justification of any instances in which legal calls or visitation is restricted.

**ICE Response to Recommendation 7:** Concur. As acknowledged by the OIG's draft report, Richwood policies, guidance, and records showed the facility complied with standards for access to legal rights groups, legal materials, and the law library. In July 2022, Richwood staff updated the cited hours for legal visitation across facility postings, the detainee handbook, and emails to legal representatives to:



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

- Monday–Friday: 8 a.m. to 4 p.m.
- Weekends: 12 to 4 p.m.
- Holidays: 4 hours per day

Richwood does not restrict legal visitation unless appropriate and necessary, such as for security reasons. If a legal visit is restricted, then the justification is noted in the legal visit log. ICE provided documentation corroborating these efforts under a separate cover on December 22, 2022. ICE requests that OIG consider this recommendation resolved and closed, as implemented.

**OIG Analysis:** We consider these actions responsive to the recommendation, which is resolved and open. ICE provided evidence of consistently cited legal visitation hours across the detainee handbook, the housing unit posting, and ICE's website. We will close this recommendation when ICE provides evidence of revised guidance in emails to legal providers and examples of past entries in Richwood's legal visit log.

**Recommendation 8:** Immediately modify the Richwood contract to decrease the guaranteed minimum to only pay for available bed space while the facility is unable to meet the contractual minimum. Then, review and update ICE's contract with Richwood by better identifying housing requirements and determining whether guaranteed minimums are necessary.

**ICE Response to Recommendation 8:** Concur. ERO New Orleans Field Office management and LaSalle Corrections are currently resolving the toilet-washbasin-shower ratios and, as part of this effort, assessed the housing requirements in May 2022. Contract modifications are being issued on an ongoing basis, as they are finalized, to enable the detention facility to house detainees within the allowable ratio. The ERO contracting officer's representative will also continue to work with the Office of Acquisition Management contracting officer to finalize and issue additional contract modifications, as appropriate. ECD: December 29, 2023.

**OIG Analysis:** We consider these actions responsive to the recommendation, which is resolved and open. We will close this recommendation when ICE provides evidence showing the contract modifications described in its response.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## Appendix A
## Objective, Scope, and Methodology

The Department of Homeland Security Office of Inspector General was established by the *Homeland Security Act of 2002* (Pub. L. No. 107-296) by amendment to the *Inspector General Act of 1978.*

DHS OIG initiated this inspection at Congress' direction. DHS OIG analyzes various factors to determine which facilities to inspect. We review OIG Hotline complaints and prior inspection reports, and past and future inspection schedules. We also consider requests, input, and information from Congress, the DHS Office of Civil Rights and Civil Liberties, nongovernmental organizations, and media outlets to determine which facilities may pose the greatest risks to the health and safety of detainees. Finally, to ensure we review facilities with both large and small detainee populations in geographically diverse locations, we consider facility type (e.g., service processing centers, contract detention facilities, and intergovernmental service agreement facilities) and applicable PBNDS.

We generally limited our scope to the PBNDS 2011 for health, safety, medical care, mental health care, grievances, classification, searches, use of segregation, use of force, and staff training. However, as noted in this report, our medical contractors also used the National Commission on Correctional Health Care's 2018 *Standards for Health Services in Jails* when reviewing medical related policies and procedures at the facility. Finally, we conducted a limited review of facility compliance with COVID-19 requirements.

Prior to our inspection, we reviewed relevant background information, including:

- OIG Hotline complaints
- ICE PBNDS 2011
- ICE Office of Detention Oversight reports and other inspection reports
- Information from nongovernmental organizations

We conducted our unannounced in-person inspection of Richwood from June 28 through June 30, 2022. During the inspection, we:

- Conducted an in-person walk-through of the facility. We viewed areas used by detainees, including intake processing areas; medical facilities; residential areas, including sleeping, showering, and toilet facilities; legal services areas, including law libraries; and recreational facilities.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

- Reviewed the facility's compliance with key health, safety, and welfare requirements of the PBNDS 2011 for classification, segregation, voluntary work program, access to legal services, access to medical care and mental health care, and medical and nonmedical grievances.

- Reviewed the facility's response to the COVID-19 pandemic.

- Interviewed ICE and detention facility staff members, including key ICE operational and detention facility oversight staff and detention facility medical, segregation, classification, grievance, and compliance officers.

- Interviewed detainees held at the detention facility to evaluate compliance with PBNDS 2011 grievance procedures and grievance resolution.

- Reviewed documentary evidence, including medical files, and grievance and communication logs and files.

We contracted with a team of qualified medical professionals to conduct a comprehensive evaluation of detainee medical care at the Richwood facility. We incorporated information provided by the medical contractors in our findings.

We conducted this review under the authority of the *Inspector General Act of 1978, as amended,* and according to the *Quality Standards for Inspection and Evaluation* issued by the Council of the Inspectors General on Integrity and Efficiency.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

# Appendix B
# ICE Comments on the Draft Report

*Office of the Director*

**U.S. Department of Homeland Security**
500 12th Street SW
Washington, DC 20536



January 23, 2023

MEMORANDUM FOR:    Joseph V. Cuffari, Ph.D.
                           Inspector General

FROM:                       Deborah Fleischaker    DEBORAH T      Digitally signed by DEBORAH T
                          (A) Chief of Staff        FLEISCHAKER    FLEISCHAKER
                                                                 Date: 2023.01.21 20:08:30 -05'00'

SUBJECT:               Management Response to Draft Report: "Violations of ICE
                          Detention Standards at Richwood Correctional Center in
                          Monroe, LA" (Project No. 21-005-ISP-ICE(f))

Thank you for the opportunity to comment on this draft report. U.S. Immigration and
Customs Enforcement (ICE) appreciates the work of the Office of Inspector General
(OIG) in planning and conducting its review and issuing this report.

ICE leadership is particularly pleased to note that the OIG found the ICE Richwood
Correctional Center (RCC) in compliance with detention standards for detainee
classification and segregation, the voluntary work program, and medical care. In
addition, OIG found that ICE took proactive steps to protect individuals in custody and
prevent the spread of COVID-19 by restricting services and social activities, as well as
requiring staff and detainees to wear masks if not maintaining a distance of six feet from
each other. ICE remains committed to ensuring the safety and well-being of its staff, and
noncitizens in its custody who should reside in safe, secure, and humane environments
and under appropriate conditions of confinement.

More specifically, noncitizens at RCC are provided with information on the importance
of maintaining safe distancing, wearing a mask, proper handwashing, and personal
hygiene as it relates to the prevention of COVID-19. In addition, (1) RCC provided

www.ice.gov



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

Management Response to Draft Report: "Violations of ICE Detention Standards at Richwood
Correctional Center in Monroe, LA" (Project No. 21-005-ISP-ICE(f))
Page 2

detainees with appropriate personal protective equipment and had a program in place to
ensure the timely administration of vaccines, and (2) between April 8, 2021, and June 29,
2022, administered 1,183 COVID-19 vaccine doses to detainees. Furthermore, ICE
implemented protocols and testing procedures for COVID-19 in accordance with ICE
Enforcement and Removal Operations (ERO) COVID-19 pandemic response
requirements (PRR),[1] which align with the Centers for Disease Control and Prevention
(CDC) "Interim Guidance on Management of COVID-19 in Correctional and Detention
Facilities."[2]

The draft report contained eight recommendations, with which ICE concurs. Enclosed
find our detailed response to the recommendations. ICE previously submitted technical
comments addressing several accuracy, contextual, and other issues under a separate
cover for OIG's consideration, as appropriate.

Again, thank you for the opportunity to review and comment on this draft report. Please
feel free to contact me if you have any questions.

Enclosure

---

[1] https://www.ice.gov/doclib/coronavirus/eroCOVID19responseReqsCleanFacilities.pdf
[2] https://stacks.cdc.gov/view/cdc/107037



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

Management Response to Draft Report: "Violations of ICE Detention Standards at Richwood
Correctional Center in Monroe, LA" (Project No. 21-005-ISP-ICE(f))
Page 3

**Enclosure: Management Response to Recommendations
Contained in 21-005-ISP-ICE(f)**

OIG recommended that the ICE Executive Associate Director of ERO direct the New
Orleans Field Office, responsible for RCC to:

**Recommendation 1:**  Provide training and guidance for facility staff on the use of
language line translation services.

**Response:**  Concur.  On August 23, 2022, RCC provided language line translation
services training to the detention facility staff.  In addition, on October 25, 2022, the RCC
Health Services Administrator provided language line translation services training to
medical staff during their monthly staff meeting.  ICE provided the OIG documentation
corroborating these efforts under a separate cover on December 22, 2022.  ICE requests
the OIG consider this recommendation resolved and closed, as implemented.

**Recommendation 2:**  Ensure facility conditions […] identified as deficient (rusted
bunks, shower water pressure, kitchen cleanliness, and detainee clothing) are corrected
and provide proof of scheduled renovations.

**Response:**  Concur.  On November 5, 2022, RCC introduced a new cleaning schedule
that identifies 17 different cleaning tasks that must be performed and checked off the list
each day.  After all tasks have been completed, the employee assigned the duty must sign
and date the cleaning schedule, verifying that all cleaning tasks have been performed for
that day.  Further, each housing unit's bathroom/shower area is currently scheduled for
renovations, which are already underway.  At this time, one bathroom/shower area
renovations were completed in October 2021, and another is near completion.  ICE
provided the OIG documentation corroborating the efforts to date under a separate cover
on December 22, 2022.  Estimated Completion Date (ECD):  December 29, 2023.

**Recommendation 3**:  Comply with the PBNDS 2011 [Performance-Based National
Detention Standards 2011 grievance standard by:

    a.  ensuring detainees have access to paper grievance forms, including medical
        grievance forms, and can submit paper or electronic grievances;

    b.  ensuring detainees can submit medical grievances directly to medical staff;

    c.  establishing a grievance appeals board;



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

Management Response to Draft Report: "Violations of ICE Detention Standards at Richwood Correctional Center in Monroe, LA" (Project No. 21-005-ISP-ICE(f))
Page 4

    d.  updating the facility handbook to accurately reflect grievance process; and

    e.  conducting training for the facility grievance officer and other department leads on processes for all grievances (including informal, formal, medical, and emergency), grievance appeals, and appellate review.

**Response:** Concur. As of October 26, 2022, RCC detainees can submit paper and electronic grievances directly to medical staff, RCC staff, or ICE ERO officers. Detainees can access the grievance system through the tablets located in every housing unit and obtain paper forms from the "duty bubble" and RCC staff. RCC's policy, consistent with PBNDS 2011, outlines the grievance appeal process consisting of three review levels: (1) grievance officer review; (2) grievance appeals board review; and (3) appellate review. Currently, ICE ERO Field Office management is working on reconstituting the grievance appeals board and designating officials. Once this is completed, the facility handbook will be updated, and training will be provided to the facility grievance officer and other department leads on the grievance process. ECD: March 31, 2023.

**Recommendation 4:** Establish a grievance tracking system to ensure timely responses to all detainee grievances filed at Richwood.

**Response:** Concur. On August 23, 2022, the Facility Administrator sent a "Statement of Fact" to all RCC staff indicating that all grievances, and related communication will be addressed appropriately and within five calendar days, consistent with the PBNDS 2011. ERO Field Office management also regularly monitor grievances to ensure timely responses by RCC staff, and to also make certain there is a tracking mechanism for grievances that is overseen by ERO Field Office management. ICE provided the OIG documentation corroborating these efforts under a separate cover on December 23, 2022. ICE requests the OIG consider this recommendation resolved and closed, as implemented.

**Recommendation 5:** Comply with the PBNDS 2011 staff-detainee communications standard by:

    a.  ensuring detainees can access paper request forms and can submit paper or electronic requests to ICE and facility staff;

    b.  ensuring detainees have opportunities to communicate requests and receive responses in a language they can understand; and



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

Management Response to Draft Report: "Violations of ICE Detention Standards at Richwood
Correctional Center in Monroe, LA" (Project No. 21-005-ISP-ICE(f))
Page 5

   c.  maintaining copies of each completed detainee request in detainees' detention
      files.

**Response:** Concur. As of June 2022, paper detainee request forms are placed in every
"duty bubble" within the detention facility for detainees to access. In addition, following
the OIG inspection, the ERO Field Office management provided guidance to detainees on
how to request paper forms from RCC staff and, if the detainee speaks a language other
than English or Spanish, directed that the form be translated using the language line
translation services, as appropriate. ERO officers also place completed detainee request
forms in the detainees' detention files, which are maintained electronically. ICE
provided the OIG documentation corroborating these efforts under a separate cover on
December 22, 2022. ICE requests the OIG consider this recommendation resolved and
closed, as implemented.

**Recommendation 6:** Establish a request tracking system to ensure timely responses to
all detainee requests filed at Richwood, with a complete request log.

**Response:** Concur. All detainee requests at the RCC are tracked and monitored
electronically. Detainee request logs can be obtained from the system at any time to
analyze the response time and completion. Consistent with PBNDS 2011, RCC will
maintain records of all detainee requests in a log and for a retention period of a minimum
of three years. Additionally, the on-site ERO Supervisory Detention and Deportation
Officer has been tasked with tracking and monitoring detainee requests to ensure they are
appropriately answered within the required three business days. As of June 2022, if a
request is completed via paper form, the information is recorded and maintained in a log
on a share drive for all ERO officers to readily access and update as needed. ICE
provided the OIG documentation corroborating these efforts under a separate cover on
December 22, 2022. ICE requests the OIG consider this recommendation resolved and
closed, as implemented.

**Recommendation 7:** Ensure detainees are permitted unrestricted legal visitation, when
appropriate, and establish a process for documenting justification of any instances in
which legal calls or visitation is restricted.

**Response:** Concur. As acknowledged by the OIG's draft report, the RCC policies,
guidance, and records showed the facility complied with standards for access to legal
rights groups and materials, and the law library. In July 2022, RCC staff updated the
cited hours for legal visitation across facility postings, detainee handbook, and emails to
legal representatives to:

- Monday-Friday: 8 a.m. to 4 p.m.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

Management Response to Draft Report: "Violations of ICE Detention Standards at Richwood Correctional Center in Monroe, LA" (Project No. 21-005-ISP-ICE(f))
Page 6

- Weekends: 12 to 4 p.m.
- Holidays: 4 hours per day

RCC does not restrict legal visitation unless appropriate and necessary, such as for security reasons. If a legal visit is restricted, then the justification is noted in the "Legal Visit Log."

ICE provided the OIG documentation corroborating these efforts under a separate cover on December 22, 2022. ICE requests the OIG consider this recommendation resolved and closed, as implemented.

**Recommendation 8:** Immediately modify the Richwood contract to decrease the guaranteed minimum to only pay for available bed space while the facility is unable to meet the contractual minimum. Then, review and update ICE's contract with Richwood by better identifying housing requirements and determining whether guaranteed minimums are necessary.

**Response:** Concur. The ERO New Orleans Field Office management and LaSalle Corrections are currently resolving the toilet-washbasin-shower ratios and, as part of this effort, assessed the housing requirements in May 2022. Contract modifications are being issued on an ongoing basis, as they are finalized, to enable the detention facility to house detainees within the allowable ratio. The ERO Contracting Officer Representative will also continue to work with the Office of Acquisition Management Contracting Officer to finalize and issue additional contract modifications, as appropriate. ECD: December 29, 2023.



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## Appendix C
## Office of Inspections and Evaluations Major Contributors to This Report

John Shiffer, Chief Inspector
Jennifer Berry, Lead Inspector
Ian Stumpf, Senior Inspector
Mitchell Trump, Senior Inspector
Brett Cheney, Inspector
Natalia Segermeister, Attorney Advisor
Lisa Knight, Communications Analyst
Benjamin Diamond, Independent Referencer



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

## Appendix D
## Report Distribution

**Department of Homeland Security**

Secretary
Deputy Secretary
Chief of Staff
Deputy Chiefs of Staff
General Counsel
Executive Secretary
Director, GAO/OIG Liaison Office
Under Secretary, Office of Strategy, Policy, and Plans
Assistant Secretary for Office of Public Affairs
Assistant Secretary for Office of Legislative Affairs
ICE Audit Liaison

**Office of Management and Budget**

Chief, Homeland Security Branch
DHS OIG Budget Examiner

**Congress**

Congressional Oversight and Appropriations Committees

## Additional Information and Copies

To view this and any of our other reports, please visit our website at:
www.oig.dhs.gov.

For further information or questions, please contact Office of Inspector General
Public Affairs at: DHS-OIG.OfficePublicAffairs@oig.dhs.gov.
Follow us on Twitter at: @dhsoig.



## OIG Hotline

To report fraud, waste, or abuse, visit our website at www.oig.dhs.gov and click
on the red "Hotline" box. If you cannot access our website, call our hotline at
(800) 323-8603, or write to us at:

Department of Homeland Security
Office of Inspector General, Mail Stop 0305
Attention: Hotline
245 Murray Drive, SW
Washington, DC 20528-0305