UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IVAN PEREZ CANOLA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES DEPARTMENT OF ) <br> HOMELAND SECURITY, *et al.*, ) <br> ) <br> Defendants. ) | No. 25 C 10525 <br><br> Judge Valderrama |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO
### PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Ivan Perez Canola has filed a complaint for this court to, among other things, compel defendants to release him from custody, monetary damages, and micromanage his pending removal proceedings. Dkt. 1 ("Complaint" or "Compl."). To that end, Mr. Canola has also filed a motion for a temporary restraining order demanding that this court release him from custody and prevent his removal from this country by dictating his ongoing immigration proceedings. Dkt. 6 ("Plaintiff's Mot." or "Pl.'s Mot."). But he has no chance of success here for several reasons.

### Background

**I.  Statutory and Regulatory History**

Congress has long provided authority to immigration officials to use parole to release foreign nationals into the interior of the United States, emphasizing that parole is not an "admission" within the meaning of the Immigration and Nationality Act ("INA"). 8 U.S.C. §§ 1101(a)(13)(B), 1182(d)(5)(A). After the passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), though the Secretary of Homeland Security "may . . . in [her] discretion parole" an "alien applying for admission," and specifies that such a parole is

done "temporarily under such conditions as [the Secretary] may prescribe [and] only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). The statute further states that parole may be terminated "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." *Id.* Thus, both the grant of parole and its termination are committed to the discretion of the Secretary.

Importantly, though, parole is not an admission to the United States. *Id.*; *see id.* § 1101(a)(13)(B). "[A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)); *see also Leng May Ma v. Barber*, 357 U.S. 185, 188–90 (1958). There are multiple ways in which parole can expire or be terminated; among other possibilities, service of a document charging the foreign national with being removable terminates parole. *See* 8 C.F.R. § 212.5(e)(2). And when parole ends, that person "shall be restored to the status that he or she had at the time of parole." *Id.* As Congress put it, "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case *shall continue to be dealt with in the same manner as that of any other applicant for admission* to the United States." 8 U.S.C. § 1182(d)(5)(A) (emphasis added).

Equally relevant to this case is asylum, which provides a right to remain in the United States to certain foreign nationals who meet the definition of a "refugee." 8 U.S.C. § 1158(b)(1)(A). That definition, borrowed from international law, includes, generally, a person "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [his] country [of nationality] because of persecution or a well-founded fear of

persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). If a foreign national within the United States is found inadmissible or deportable, an officer "shall refer the application to an immigration judge ... for adjudication in removal proceedings." 8 C.F.R. § 208.14(c)(1).

Once in removal proceedings, the application for asylum will be adjudicated by an immigration judge as a defense to removal. *See id.* § 208.2(b). An unsuccessful applicant can appeal to the Board of Immigration Appeals ("BIA"), *id.* § 1003.38(a), and there are various opportunities to request re-opening or reconsideration before the immigration judge and the Board, *id.* §§ 1003.23 (immigration judge), 1003.2 (Board). If the agency determines, after the conclusion of removal proceedings, that the foreign national's application for asylum will not be granted, that person may petition for review of the Board's decision in the appropriate court of appeals. *See* 8 U.S.C. § 1252(a)(5). During the time of these removal proceedings, though, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States[.]" 8 U.S.C. § 1226(a).

## II. Factual and Procedural History

Mr. Canola is a foreign national who "came to the Hidalgo, Texas Port of Entry on June 10, 2023," but "was not admitted to the United States and was issued a[ Notice to Appear ("NTA")]." Defendants' Exhibit 1 at 2. According to the complaint and Plaintiff's Motion, he was "paroled in[to] the country by the Biden administration," Compl. ¶ 4, which ran through June 8, 2025, *see* Pl.'s Mot. at 1. During that period, Mr. Canola applied for asylum and was placed into removal proceedings before an immigration judge in Chicago. *See* Compl. ¶ 7. After his parole expired, however, U.S. Immigration and Customs Enforcement ("ICE") "arrested Plaintiff and" brought him "to a holding facility in Louisiana," *id.* at ¶ 8, which prompted his removal

proceedings to be transferred "to the detained Louisiana docket" in June 2025, Pl.'s Mot. at 4. Mr. Canola was denied bond by the immigration judge in Louisiana last week, *see* Defendants' Exhibit 1, and scheduled him for an individual calendar hearing for today, *see* Pl.'s Mot. at 4.

Rather than deal with his ongoing proceedings in Louisiana, Mr. Canola filed the instant matter and Plaintiff's Motion yesterday afternoon. *See* Dkt. 1, 6. His complaint lists four causes of action, all brought under 42 U.S.C. § 1983, and each stemming from his detention and removal proceedings being conducted in Louisiana rather than Chicago: (1) a § 1983 claim asserting that his arrest and detention in Louisiana pending his removal proceeding violates his right to counsel, Compl. ¶¶ 1–20; (2) a § 1983 claim asserting that he was unlawfully arrested despite having never been admitted into this country and lacking lawful status,[1] *id.* at ¶¶ 21–29; (3) a § 1983 claim asserting that he is unlawfully detained pending his removal proceedings in Louisiana, *id.* at ¶¶ 30–33; and (4) a § 1983 claim alleging that his detention in Louisiana amounts to a due process violation, *id.* at ¶¶ 34–38. Plaintiff's Motion makes various arguments along the same lines and essentially alleges that everything about Mr. Canola's proceedings, as well as him even having to be in Louisiana (at all) or detained pending his removal proceedings, violates the Constitution.

**Legal Standard**

Plaintiff's Motion seeks a temporary restraining order ("TRO"), *see* Pl.'s Mot. at 6, which this court is converting as a motion for a preliminary injunction, Dkt. 10. Such relief is meant to preserve the status quo pending a final, legal determination on the merits of the case. *See Univ. of*

---

[1] When a foreign national's parole is revoked or expires, that person reverts to the status they possessed prior to the grant of parole which, in the case of all those paroled at a port of entry, is that of an applicant for admission standing at the threshold of entry. *See* 8 U.S.C. § 1182(d)(5)(A); *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (citing the statute). In other words, once parole is terminated or expired, the person reverts to an "arriving alien." *See* Defendants' Exhibit 1 at 2.

*Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Preliminary injunctive relief is "never awarded as of right," though, *Munaf v. Geren*, 553 U.S. 674, 690 (2008), as it "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotations omitted). "The standards for granting a temporary restraining order and preliminary injunction are the same." *USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 (N.D. Ill. 2019) (collecting cases). More specifically, a movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765 (7th Cir. 2011).

As the Seventh Circuit has explained, an "applicant must make a strong showing that she is likely to succeed on the merits." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). "[A] possibility of success is not enough. Neither is a 'better than negligible' chance." *Id.* Movants must also demonstrate clearly, and through specific factual allegations, that immediate and irreparable injury will result to them absent the order. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (citations omitted). Only if the movant meets their burden of showing both a likelihood of success on the merits and an imminent risk of irreparable harm will courts then engage in further analysis. *See Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

## Argument

**I.     Plaintiff's Motion Should Be Denied Because There Is No Likelihood for Success.**

As alluded to above, the Plaintiff's Motion should be denied because there is no chance for him to succeed on any of his claims for relief. To begin with, every one of the causes of action within the complaint is based on § 1983, which does not even apply to federal officers (the only

5

defendants in this case) executing federal laws.[2]  *See District of Columbia. v. Carter*, 409 U.S. 418, 424–25 (1973) ("Like the Amendment upon which it is based, § 1983 is of only limited scope. The statute deals only with those deprivations of rights that are accomplished under the color of the law of 'any State or Territory' . . . . It does not reach . . . actions of the Federal Government and its officers[.]").

Setting aside how Mr. Canola has not actually pleaded a viable claim for relief, this case should also be dismissed because the complaint admits that he has been in Louisiana (not in this district) *for months* while his immigration proceedings continue to play out within that state.  *See* Compl. ¶¶ 8.  As the Supreme Court explained earlier this year, without any custodian to premise jurisdiction or venue upon for the purposes of plaintiff's unlawful detention claims, *see, e.g.*, *Trump v. J.G.G.*, 145 S. Ct. 1003 (2024) (per curiam), venue is improper and there is thus little likelihood for success, *see id.* at 1006 ("The detainees are confined in Texas, so venue is improper in the District of Columbia.  As a result, the Government is likely to succeed on the merits of this action."); *see also Kulla v. Mayorkas*, No. 24 C 3847, 2024 WL 4188017, at *2 (N.D. Ill. Sept. 13, 2024) (similar). Under 28 U.S.C. § 1391(e), a suit against the federal government or a federal official acting in their official capacity can be brought in any judicial district where: (1) a defendant resides if all defendants are residents of the State in which the district is located; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) the plaintiff resides if no real property is involved in the action.  Here, Mr. Canola asserts that "[v]enue is proper because the underlying violation occurred outside an EOIR court room in Chicago on the 15th floor of 55 E. Monroe Street."  Compl. ¶ 3.  But that is wrong because the gravamen of the complaint focuses

---

[2]  Federal officers may be sued under § 1983 only if they act in concert with local or state officials to violate the Constitution or laws of the United States.  *See Dumbrowski v. Eastland*, 387 U.S. 82, 83 (1967).  That exception is inapplicable here, however, as Mr. Canola does not allege that defendants acted in concert with any state or local officials.

on Mr. Canola's detention in Louisiana, the purported difficulties he has had in communicating and working with counsel because of that detention in Louisiana, and the underlying course of his ongoing removal proceedings in Louisiana. *See id.* at ¶¶ 15, 19, 30–38. This means that no "substantial part of the events" giving rise to Mr. Canola's claims (that is, his detention for removal proceedings creating constitutional violations) occurred in this district for § 1391(e). Nor do any of the defendants reside in this district. *See Reuben H. Donnelley Corp. v. FTC*, 580 F.2d 264, 266 n.3 (7th Cir. 1978) ("The residence of a federal officer has always been determined by the place where he performs his official duties."). Thus, there is no basis for venue under § 1391(e), *see Kulla*, 2024 WL 4188017, at *2, which means "the Government is likely to succeed on the merits," *J.G.G.*, 2025 WL 1024097, at *1.

Indeed, Mr. Canola's challenges to his detention run into the additional hurdle of failing to name a custodian over whom this court has jurisdiction. For example, the habeas statute clearly provides that federal judges are entitled to issue writs of habeas corpus only "within their respective jurisdictions," and the writ "shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him, and by virtue of what claim or authority if known." 28 U.S.C. §§ 2241(a), 2242, & 2243. Much like with *J.G.G.*, the Supreme Court has ruled for over a century that a habeas petitioner's custodian is the person "'who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge.'" *Kholyavskiy v. Achim*, 443 F.3d 946, 949 (7th Cir. 2006) (quoting *Wales v. Whitney,* 114 U.S. 564, 574 (1885) (emphasis added)). And in *Padilla v. Rumsfeld,* the Court held that where there is a challenge to the present physical confinement, the immediate custodian rule should apply. 542 U.S. 426, 435 (2004). In other words, both the Seventh Circuit and the Supreme Court have reiterated that the default rule "in habeas challenges to present

7

physical confinement — 'core challenges' — is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Kholyavskiy*, 443 F.3d at 952 (quoting *Padilla*, 544 U.S. at 444).

With this backdrop in mind, and because the plaintiff has named *no one* in this district who has actual custody over him, there is a jurisdictional problem over asserting venue in this district. As the Seventh Circuit stated in *Kholyavskiy*: "Congress has provided that an application for a writ of habeas corpus shall allege, among other matters, 'the name of the person who has actual custody over [the petitioner].'" 443 F.3d at 948 (alternation in original) (quoting 28 U.S.C. § 2242 ¶ 2). And if the writ is "granted by the district court, it 'shall be directed to the person having custody of the person detained.'" *Id.* (quoting 28 U.S.C. § 2243) (citation omitted). Finally, this strict adherence to the habeas statute "fits within the logic of collateral relief" because "[t]he writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Kholyavskiy*, 443 F.3d at 949 (citation omitted). That is, when the relief is granted, the person who can effectuate the relief is the named respondent, the immediate custodian, not a remote official. In this case, it is impossible for the court here to issue a writ as to the proper person (that is, the actual immediate custodian of Mr. Canola) where the only true custodian is Richwood Correctional Center in Monroe, Louisiana. Thus, without naming a proper respondent, there is no effective relief that this court may grant to plaintiff regarding those who allegedly hold him in "unlawful custody," and as such, his claims relating to his purportedly unlawful detention have no likelihood of success.

Finally, Mr. Canola's various constitutional arguments also run into the brick walls Congress has erected to specifically stop foreign nationals from attempting to undermine their ongoing removal proceedings and accompanying detention undertaken to ensure that they appear

at those proceedings. More specifically 8 U.S.C. § 1252 strictly circumscribes federal district court jurisdiction over the decisions and actions related to removal proceedings. *See, e.g.*, *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1034–35 (9th Cir. 2016). In particular, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States [] shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). Separately, 8 U.S.C. § 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals in accordance with this section s*hall be the sole and exclusive means for judicial review of*" such an order. (Emphasis added.) These provisions "mean that any issue—whether legal or factual—arising from any removal-related activity can be reviewed only through the [petition for review] process," precluding district court review of this case. *J.E.F.M.*, 837 F.3d at 1031; *accord Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007) (affirming dismissal because Congress intended to streamline the review process by "consolidat[ing] and channel[ing] review of all legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals").

As the court of appeals explained in *J.E.F.M.*, § 1252(b)(9) was meant to avoid piecemeal litigation and consolidate "all questions of law and fact" that "arise from" either an "action" or a "proceeding" brought in connection with the removal of any foreign national. 837 F.3d at 1029. "Congress . . . provided that all claims—whether statutory or constitutional—that 'aris[e] from' immigration removal proceedings can only be brought through the petition for review process in the federal courts of appeals." *Id.* (citing 8 U.S.C. §§ 1252(a)(5) & (b)(9)); *see also Aguilar*, 510 F.3d at 9. Even if a legal or factual issue does not arise from the initiation or conduct of a removal proceeding in a technical sense—for example, because the issue precedes initiation of removal

9

proceedings—where resolution of that issue necessarily affects the ultimate resolution of the foreign national's removability from the United States, that issue is inextricably intertwined with removal proceedings and must be raised in the first instance in those proceedings. *See, e.g.*, *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) ("When a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the ultimate order of removal, district courts lack jurisdiction under the REAL ID Act."); *Morales-Izquierdo v. DHS*, 600 F.3d 1076, 1082 (9th Cir. 2010) (construing section 1252(b)(9) as precluding district court review of the denial of an adjustment of status application), *overruled in part on other grounds by Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc); *accord Delgado v. Quarantillo*, 643 F.3d 52, 54 (2d Cir. 2011) (per curiam) (holding that there is no jurisdiction over claims where the relief requested would effectively "render the [removal] order" that may ultimately issue "invalid"). And again, the INA makes clear that notwithstanding any other provision of law, courts of appeal reviewing immigration proceedings may always address "constitutional claims or questions of law" arising from those proceedings. *See* 8 U.S.C. § 1252(a)(2)(D).

Applied to this case, the plaintiff's claims must first go through the administrative-review process of his hearings before the immigration judge, and if he appeals, to the BIA. This is because § 1252(b)(9) "channels review of 'all questions of law and fact' to the courts of appeals for all claims 'arising from any action taken or proceeding brought to remove an alien from the United States.'" *J.E.F.M.*, 837 F.3d at 1035 (quoting 8 U.S.C. § 1252(b)(9)). "Thus, the legislative history and chronology of amendments to § 1252(b)(9) confirm the plain meaning of the statute. We conclude that §§ 1252(a)(5) and 1252(b)(9) channel review of all claims, . . . through the [petition-for-review] process[.]" *Id.* (citing *Aguilar*, 510 F.3d at 13). This approach not only has the benefit

10

of accomplishing what Congress desired (avoiding piecemeal litigation) but is also in harmony with the Seventh Circuit's statements that it is better to have immigration proceedings run their course prior to other, intervening claims being litigated so as to undermine those pending removal proceedings. *See Dhakal v. Sessions*, 895 F.3d 532, 539 (7th Cir. 2018); *Kashani v. Nelson*, 793 F.2d 818, 825 (7th Cir. 1986).

## II. The Plaintiff Has Not Shown Irreparable Harm.

This court should also deny Plaintiff's Motion because he has not carried his burden to show that he is likely to suffer imminent, *irreparable* harm. *See Int'l Union, Allied Indus. Workers of Am., AFL-CIO v. Local Union No. 589*, 693 F.2d 666, 674 (7th Cir. 1982). Here, Mr. Canola argues that he will face irreparable harm that he may be deported and may not be able to get monetary damages. Compl. ¶ 33. But this argument is based on the premise that Mr. Canola is somehow entitled to asylum and thereby remain free in the United States during his removal proceedings. That premise is completely wrong because statutes authorize quite the opposite. *See* 8 U.S.C. § 1226(a). Thus, Mr. Canola has failed to demonstrate that any irreparable harm—beyond the typical hardship experienced by someone removed from an executed final order of removal—is likely.

This context matters because Mr. Canola is not truly seeking constitutional relief where, as here, he seeks to instead use this case as a vehicle to regularize his status within the United States or proceed before a specific immigration judge here in Chicago, via judicial order. *See* Pl.'s Mot. at 8. In this regard, his removal-based petition is more reminiscent of the petitioner in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). In that case, the Supreme Court explained that by seeking vacatur of his removal order, as well as an opportunity to apply for asylum and other relief from removal, the habeas petitioner was seeking something "far outside"

11

and "entirely different" from what can be said to be "core" habeas relief. *Id.* at 117–19.[3] Applying that logic here, the problem in this case vis-à-vis irreparable harm is that Mr. Canola's seeks the ability to "remain in [the United States] or to obtain administrative review potentially leading to that result." *Thuraissigiam*, 591 U.S. at 117.

Furthermore, Mr. Canola's claims of irreparable injury (including those for economic injuries) here are severely weakened by how long it took him to seek preliminary injunctive relief after he was detained in Louisiana and his case transferred to an immigration judge in that state—two months. This matters because courts have often held that "[a] long delay by plaintiff after learning of the threatened harm . . . may be taken as an indication that the harm [is] not . . . serious enough to justify a preliminary injunction." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2948.1 (3d ed. 2013); *accord Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) ("Delay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm if a preliminary injunction is not entered."); *Shaffer v. Globe Protection, Inc.*, 721 F.2d 1121, 1123 (7th Cir. 1983) (two-month delay in filing motion weighs heavily against issuance of injunction);. This principle has been followed by many courts across the country: "[A] delay in requesting equitable relief is inconsistent with a claim of irreparable injury." *Taylor v. Biglari*, 971 F. Supp. 2d 847, 853 (S.D. Ind. 2013) (holding that a months-long delay undermines claim of irreparable injury). It makes

---

[3] This same aspect of "core" habeas relief was also revisited by the Court in *J.G.G.* In that case, though, the petitioners' argument was premised upon a finding that the relief sought "necessarily impl[ies] the invalidity of [petitioners'] confinement and removal," which consequently made habeas in the district of confinement (rather than an APA claim in the District of Columbia) the appropriate remedial vehicle for relief in that case. *Id.* at 1005–06 (quotation omitted); *see also J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *35 n.40 (D.C. Cir. Mar. 26, 2025) (Walker, J., dissenting) (explaining that the petitioners in *J.G.G.* could seek habeas relief, unlike Thuraissigiam, who "was not making a core habeas challenge to his removal" but "seeking affirmative administrative relief").

12

no difference that this case is about immigration status. *See, e.g.*, *Scroos LLC v. Att'y Gen. of the U.S.*, No. 20-cv-689, 2020 WL 5534281, at *2 (M.D. Fla. Aug. 27, 2020) (denying preliminary injunction in an L-1 visa case because the plaintiffs' "delay in seeking relief—ranging from three to nearly five months—weighs heavily against any finding of irreparable harm"). Accordingly, Mr. Canola has failed to carry its burden that he will imminently suffer an actual and irreparable harm.

### III. The Balance of Equities and the Public Interest Favor Defendants.

The final two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Because plaintiff has not made either threshold showing, this court need not reach this element for preliminary relief. But Mr. Canola has further failed to demonstrate—as he must—that his threatened irreparable injury of losing his immigration proceedings and potentially being deported would cause the federal government and the public interest—that is, nonparties.[4] *See Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021); *see also Nken*, 556 U.S. at 435. This court weighs these factors using a "sliding scale" approach: "The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Cassell*, 990 F.3d at 545 (quoting *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018)).

In this case, the plaintiff's argument for harm ignores how he is in this country without lawful status. *Cf.* H.R. Rep. No. 87-565, at 2 (1961) (discussing how meritless lawsuits filed

---

[4] Such third parties would include U.S. citizens, lawful permanent residents, and other foreign nationals with legal permission to be in the United States, as they may suffer injuries from unlawfully present foreign nationals who compete for employment and scarce resources. *See, e.g.*, *De Canas v. Bica*, 424 U.S. 351, 356–57 (1976). Similarly, not enforcing immigration laws against such unlawfully present foreign nationals may result in U.S. persons becoming crime victims. *See, e.g.*, Laken Riley Act, Pub. L. 119-1, 139 Stat. 3 (2025); *Steinle v. City & County of San Francisco*, 230 F. Supp. 3d 994, 1004–05 (N.D. Cal. 2017).

"solely for the purpose of preventing or delaying indefinitely deportation" began to proliferate decades ago). Moreover, when addressing the balance of the harms, Plaintiff's Motion rests entirely on the conclusory argument that a cornucopia of constitutional rights have been violated, but he does not want for this court to follow Congress's channeling provisions for such claims under § 1252(a)(2)(D). The problem with this argument is that Mr. Canola is receiving due process through his removal proceedings and is thus unable to demonstrate any harm absent a clear victory on the merits (that is, his conclusory constitutional arguments). Hence, if this court does not find that Mr. Canola has clearly demonstrated such constitutional harms, this court must deny Plaintiff's Motion.

Finally, this court may grant preliminary injunctive relief only if plaintiff "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). Rule 65(c) thus makes some form of security *mandatory*. *See Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1141 (7th Cir. 1994). Any argument to the contrary here would overlook that restraining active governmental operations (in this case, undoing the ongoing detention and deportation arrangements already made for the plaintiff) *does* cost the federal government money and resources. *See Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010).

## Conclusion

For the foregoing reasons, Plaintiff's Motion should be denied.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Joshua S. Press
    JOSHUA S. PRESS
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-7625
    joshua.press@usdoj.gov